Whitaker, Judge,
delivered the opinion of the court:
On June 19, 1942, plaintiffs entered into a contract with defendant for the grading, paving, draining, and fencing of the Jefferson County Airport near Beaumont, Texas. The project was to be completed within 120 days after receipt of notice to proceed. . The 120 days expired on October 25,1942. The contract was terminated by defendant on December 15, 1942, “because,” as stated in the contracting officer’s letter, “of your failure to complete the contract within the contract time.” Plaintiffs claim that the termination was wrongful and they sue for damages which they say they sustained.
From the outset plaintiffs encountered excessive rainfall. In July 1942 there were eight inches of rainfall in excess of normal, and in both August and September there were more than three inches in excess of normal. In all, there were thirty-three days between July 3 and October 25,1942 when rain fell at the project.
The airport was to be constructed .on marshy clay soil formerly used for the production of rice. Old terraces and levees, which had been constructed to retain water for the rice paddies, were still in place when plaintiffs commenced the work. The area was filled with deep ruts left by rice harvesting machinery, which, together with the terraces, blocked the normal drainage of the area, and also rendered partially ineffective plaintiffs’ attempts to provide temporary drainage. Consequently, water frequently covered the field to a depth of two feet during this period, making excavation work practically impossible. The only work which progressed under such conditions was the installation of the storm drainage system. The water and mud did not substantially interfere with this work because draglines were used for excavating the ditches and sleds were used for hauling the drain pipes.
Plaintiffs’ excavation subcontractor araived on the project after the rainy period had begun, and although he worked whenever weather conditions permitted, he made very little *367 progress, not only because of the rain, but also because of his lack of adequate equipment. On September 6,1942, plaintiffs relieved the excavation subcontractor and assumed that portion of the work themselves.
As a result of the adverse weather and the lack of adequate machinery, plaintiffs had completed only 2.03 per cent of the contract by August 1, 9.3 per cent by September 1, and 15.3 per cent by October 1,1942. The District Engineer was dissatisfied with this showing by plaintiffs, notwithstanding the adverse weather conditions, and by letter of September 10 threatened to terminate plaintiffs’ right to proceed unless they effected considerable improvement by September 15. Plaintiffs told the District Engineer that they had additional scrapers enroute to the project, which they felt would enable them to increase the rate of progress and, because of this, they were permitted to proceed.
Plaintiffs encountered no abnormal weather conditions from September 18 to October 25, 1942.
On October 22, just prior to the contract completion date, Colonel Hewitt, the District Engineer, who was the superior of the contracting officer, conferred with plaintiffs to determine whether they could complete the contract within a reasonable time. Plaintiffs stated that they could complete it within 45 days, and upon this assurance Colonel Hewitt orally agreed that they might proceed with the work provided that they would put adequate machinery on the job and replace the present superintendent in charge of the work with a competent one and would furnish a progress chart showing the manner in which they proposed to complete the project.
Plaintiffs complied with these requests, and by November 1, 1942, had completed 20.6 per cent of the work. On November 7, plaintiffs began to work day and night shifts. Substantial progress was made thereafter and by November 20 plaintiffs had placed the base course on one runway over an area 1,600 feet long and 30 feet wide. (The contract called for two runways, each 4,000 feet long and 150 feet wide, and for 6,800 linear feet of taxiways.) On this date plaintiffs requested permission for their subcontractor to begin *368 pa.vi.ng the runway, but this permission was denied by the resident engineer on the ground that plaintiffs had not properly compacted the base course.
On November 23,1942, plaintiffs and their paving subcontractor visited the District Engineer to protest the refusal to permit them to begin paving. At this visit plaintiffs delivered to him a letter requesting that “the contracting officer” grant an additional eighty-day extension due to adverse weather conditions, scarcity of materials, and labor shortages. The District Engineer orally refused plaintiffs’ request and informed them that he intended to terminate their right to proceed because of their failure to maintain the rate of progress promised on October 22,1942, and that, therefore, it would be inadvisable to permit plaintiffs’ subcontractor to begin paving the runways. Colonel Hewitt, the District Engineer, also' told plaintiffs that the Civil Aeronautics Administration had authorized the enlargement of the airport, and that he had been ordered to proceed with plans for the additional work.
Following this meeting. Colonel Hewitt wrote a letter to plaintiffs, on December 2, 1942, denying their request of November 23 for an eighty-day extension of time, and terminating their right to proceed under the contract, effective December 15, because of plaintiffs’ “failure to complete the contract within the required time.” Another reason for terminating the contract, although this reason was not given in the letter of the District Engineer, was the fact that the additional work for the enlargement of the project was to be contracted for immediately, and plaintiffs’ past rate of progress did not indicate that they would be able to complete the enlarged project within a l’easonable time.
Plaintiffs did not appeal from either the denial of the request for an extension of time or from the order of termination. Instead, plaintiffs wrote to the District Engineer on December 5,1942, stating that they would attempt to cooperate in all respects with the new prime contractor. On December 15 plaintiffs discontinued work on the project, which at that time, 171 days after the starting date, and 51 days after the contract completion date, was only about 2'9 percent completed.
*369 On January 15, 1943, defendant contracted with the firm of Euss Mitchellj Inc.$ to complete the remainder of the plaintiffs’ work, and also to perform the additional work involved in enlarging the airport.
On January 20, 1943, plaintiffs wrote to the new District Engineer, Colonel Saville, requesting that he waive their failure to appeal within the time limit from the denial of their request for an extension of time, and to reconsider the data attached to their letter. This request was granted, and as a result of a detailed investigation, a contract modification was issued on February 26,1943, granting plaintiffs an extension of 51 days for weather delays, which extended the completion date until December 15, 1942, thus making it coincide with the effective date of termination. On May 11, 1943, plaintiffs signed the modification without protest, and again did not appeal from the decision.
By April 18, 1944, the new contractor had completed the work, enabling the defendant to issue a final estimate and settlement statement for plaintiffs’ contract. Plaintiffs were assessed $58,985.49 for excess costs and inspection services incurred in completing the work called for by plaintiffs’ contract and were credited with the amount of liquidated damages previously deducted and with the amounts earned for work performed in November and December 1942, leaving a balance due defendant of $7,572.08, which was demanded by defendant, and which was paid under protest on June 9, 1944.
Prior to paying the excess costs, plaintiffs on May 26,1944, presented to the District Engineer a claim for $17,763.72, representing the alleged loss to plaintiffs arising from the refusal to permit their subcontractor to pave during the period from November 23, 1942 to December 15, 1942, and they also asked to be relieved from the inspection costs assessed against them in the final settlement. This claim was denied on June 6, 1944, and plaintiffs were advised of their right to appeal from the decision, but they failed to do so.
There seems to be some equity in plaintiffs’ claim, but they are not entitled to recover: because of their failure to take an appeal to the head of the department from the decision of. the District Engineer terminating their right to proceed *370 under the contract and denying their application for an extension of time; and for their failure to take an appeal from the decision' of the contracting officer granting an extension of time of 51 days; and from the later decision of the contracting officer denying their claim for $17,763.72, and their request to be relieved from the $7,822.20 assessed against them for inspection and engineering costs. Indeed, instead of appealing from the decision extending their time 51 days within which to complete the contract, which was at that time 29 percent completed, plaintiffs accepted this modification of their contract without protest.
Under the Supreme Court’s decision in United States v. Joseph A. Holpuch Co. [C. Cls. Nos. 43809 and 43812], 328 U. S. 234, 240; and United States v. Blair, 321 U. S. 730, 735, and others, a contractor who has failed to pursue his administrative remedies is not entitled to bring an action in this court.
It is true that the decision of December 2,1942 terminating the contract was not a decision of the contracting officer, but was a decision of the District Engineer; but the District Engineer was the superior of the contracting officer, who worked under the control and supervision of the District Engineer. The orders and regulations of the Corps of Engineers then in effect provided that all District Engineers were contracting officers by virtue of their position. The District Engineer, in turn, had designated Captain Martin as the contracting officer for the Galveston Engineer District; but Captain Martin acted, as stated above, under the control and supervision of the District Engineer. Plaintiffs’ dealings relative to an extension of time and the termination of the contract were not with Captain Martin, but with Colonel Hewitt, the District Engineer, Captain Martin’s superior. When their contract was terminated and their request for an extension of time was refused by Colonel Hewitt, plaintiffs did not complain that he had no right to do so, but that this action should have been taken by the contracting officer. It no doubt did not occur to them to do so, since Colonel Hewitt was Captain Martin’s superior and had been exercising personal supervision over the work.
*371 Later, tbe contracting officer considered plaintiffs’ request for an extension of time and granted it, but only to tbe extent of 51 days, at the expiration of which time the work was only 29 percent completed. After this, the contracting officer denied plaintiffs’ claim for damages. No appeal was taken from either decision.
Plaintiffs also try to avoid the binding effect of the decision of the District Engineer on December 2, terminating their contract and denying their application for an extension of time, on the ground that the District Engineer made no findings of fact on their application for an extension of time and, therefore, they say there was nothing from which to appeal. It is true that article 9 of the contract, set out in a note below,[1] by implication requires the contracting officer *372 to make findings of fact on an application for an extension of time; but the cause of plaintiffs’ damage was the termination of the contract, although this may have been a consequence of the denial of an extension of time. The contract, does not require the contracting officer to make detailed findings of fact to support his order terminating the contract. It was terminated “because of your failure to complete the' contract within the contract time.” The assignment of the» reason for the termination was all that the contract required..
The contract time expired on October 25; the contract was; terminated effective December 15. The District Engineer, therefore, was correct in saying that plaintiffs had failed to-complete the contract within the contract time, unless plaintiffs were entitled to an extension of time sufficient to save-them from default. The contracting officer denied the application for an extension of time, which left plaintiffs still in default.
It is true the District Engineer did not make findings of fact to support his denial of the application for an extension of time, as the contract required, but so long as the order of termination stood, plaintiffs were powerless to proceed with the work. Under the contract their recourse was an appeal, to the head of the department. Joseph A. Holpuch Co. v. United States [No. 43813], 102 C. Cls. 795. Had an appeal' been taken, the héad of the department might have required, the District Engineer, or the contracting officer, to make-findings of fact on the application for an extension of time,, and might have set aside the order of termination. The-, defendant was entitled to his judgment in the matter before: being compelled to respond in damages in an action in court. United States v. Blair, 321 U. S. 730; United States v. Joseph A. Holpuch Co., 328 U. S. 234. On the other hand, a reversal, of the District Engineer by the head of the department was; plaintiffs’ only chance of being allowed to proceed with the-work. This could be obtained only by an appeal to him. No, appeal was taken. Instead, plaintiffs left the job on the-, termination date and turned over their material and equipment to the defendant.
Plaintiffs also say that the contract was not terminated for default in performance, but rather for the convenience-. *373 of the Government, and that where it is so terminated, they are entitled under article 25 of the contract to be reimbursed for expenditures and costs incurred by them, and aré entitled to a proportionate allowance of their estimated profits.
The letter of the District Engineer expressly stated that the contract was terminated “because of your failure to complete the contract within the required time.” There can be no doubt but that plaintiffs were in default, unless they were entitled to an extension of time. The application for extension of time was denied. The contract time was 120 days. After the lapse of 171 days, when the contract was terminated, the contract was only 29 per cent completed.
The fact that the work was to be enlarged did influence the contracting officer to some extent in deciding whether or not to terminate plaintiffs’ right to proceed, but only in that plaintiffs’ lack of progress on the original contract convinced the contracting officer that they could not complete the enlarged project within a reasonable time.
Plaintiffs are not entitled to recover. Their petition will be dismissed. It follows, of course, that the claim of the subcontractor, presented by plaintiffs, must also fail. They have no independent right of action against the defendant.
Howell, Judge; Madden, Judge; Littleton, Judge; and Jones, Chief Judge, concur.