WARREN BROS. ROADS CO. v. UNITED STATES.

No. 47557.

United States Court of Claims.

July 15, 1952.

John W. Gaskins, Washington, D. C., King & King, Washington, D. C., on the briefs, for plaintiff.

Carl Eardley, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

Plaintiff, Warren Brothers Roads Company, a paving contractor, sues to recover the losses which it and its subcontractor, A. G. Wimpy, allegedly incurred in constructing the Troy, Alabama, airport for the Civil Aeronautics Administration. Plaintiff's claims are divided into three separate causes of action, each involving a separate period of performance. In addition, plaintiff presents a fourth cause of action consisting of Wimpy's claims for each of these three periods.

### First Cause of Action

In December 1943 plaintiff received from the Civil Aeronautics Administration an invitation to bid on three schedules of work to be performed in constructing the Troy airport project. Schedule I called for bids on the clearing, grading, and draining of the site; Schedule II called for bids on the fine grading preparatory to paving, prime coating, and asphalt paving of the runways, and the seeding and fertilizing of conditioned areas surrounding the runways; and Schedule III requested bids upon a combination of Schedules I and II.

The specifications included in the bid proposal provided that if separate awards were made on Schedules I and II, it was intended that notice to proceed on Schedule II, the paving operations, would be issued not more than 70 calendar days after notice to proceed was issued on Schedule I, but the right was reserved to the Government to change the specifications prior to and during the negotiations for a contract or contracts. On the basis of this information contained in the invitation for bids, plaintiff submitted a bid to perform the work called for in Schedule II.

After plaintiff had submitted its bid, but before it entered into a contract with defendant, the Civil Aeronautics Administration on February 5, 1944, entered into a contract with Nolan-Dickerson Construction Company to clear, drain, and grade the airport site within 120 days from the effective date of notice to proceed, and further, to complete and deliver one runway, ready for paving, to the paving contractor *within 40 days* after notice to proceed, rather than within 70 days as provided in the original invitation for bids. This change in the completion time for the first runway was the result of negotiations which occurred between Nolan-Dickerson Construction Company and representatives of the Civil Aeronautics Administration following the opening of the bids, whereby Nolan-Dickerson Construction Company agreed to shorten the performance period in return for a $37,050 increase in its original bid price.

Plaintiff, on February 9, 1944, executed a written contract with the Civil Aeronautics Administration to perform the seeding, fertilizing, and paving work called for in Schedule II within 80 days from the effective date of its notice to proceed for the sum of $454,802.[1] Plaintiff's written contract incorporated the specification contained in the invitations for bids, which provided that notice to proceed on the paving work would be issued in *not more than 70 days* after the issuance of notice to proceed on Schedule I. However, the Civil Aeronautics Administration, in its letter of transmittal of the unsigned contract, advised plaintiff as follows:

"The Government will not be responsible for any action taken by you looking to the prosecution of this project until final award is made and notice to proceed is given.

"It is intended that notice to proceed will be issued not more than forty calendar days after notice to proceed is issued to the contractor under Schedule I."

Notice to proceed was issued to Nolan-Dickerson Construction Company on February 22, 1944. In order to be ready to commence paving operations within 40 days thereafter, *viz.*, by April 2, 1944, plaintiff immediately began to assemble its men and equipment. Plaintiff owned a large portable asphalt mixing plant which could be disassembled and shipped by rail from project to project. As the erection of this plant re-

---

1. The seeding and fertilizing portion of plaintiff's contract is not involved in the present suit.

quired approximately 30 days in addition to the shipping time, and as the issuance of plaintiff's notice to proceed was expected within 40 days, plaintiff shipped at once the plant to the Troy project, and sent with it the permanent crew which assembled, maintained, and operated it.

By April 2, 1944, plaintiff could have had this plant ready for operation if there had been any areas ready for paving. However, abnormally heavy rains were encountered during March and April which rendered grading virtually impossible. Plaintiff's representatives who were on the site realized that these rains, which were 10.71 inches in excess of normal in March and 9.87 inches in excess of normal in April, would delay the start of paving operations. Accordingly, plaintiff prolonged the erection of the asphalt plant in order to provide work for its permanent crew, which could not be discharged because of wartime labor restrictions and shortages. These delays continued from April 2, 1944, the anticipated date of notice to proceed, through April 30, a period of 29 days. Plaintiff was finally able to begin paving operations on May 1, 1944, although notice to proceed was not actually issued until May 5, 1944.

During the 29 days of delay in April plaintiff endeavored to make work for its crew of men in order to keep them occupied. At times the workmen were kept busy cleaning, repairing and adjusting the equipment, which work normally would have been performed while the plant was in operation; but plaintiff was unable to keep them busy all the time, although it had to pay them for the entire time.

Plaintiff insists that it is entitled to recover from defendant the losses which it suffered during the 29-day delay period, because of the fact that defendant advanced the completion date of the grading on Runway No. 1 from 70 to 40 days. Plaintiff says it was thereby compelled to immediately bring to the job its men and equipment; whereas, if the original period of 70 days had been left unchanged, it would have been unnecessary for it to have done so, and that it would not have done so until the rains

had stopped and until after grading operations had begun.

Defendant's position is that plaintiff's losses are the result of the vagaries of the weather for which it is not responsible. Defendant also insists that the advancement of the date of issuance of notice to proceed to plaintiff was a proper exercise of the right reserved to it in the bid proposal to change or modify the specifications during the course of the negotiations. Defendant says there was no misrepresentation concerning the date of issuance of plaintiff's notice to proceed since it informed plaintiff of these changes before the written contract was executed, and plaintiff registered no protest.

■ Defendant had the right to change the specifications and it notified plaintiff it had done so before the contract was signed. Plaintiff's losses were not due to any wrongful act of defendant's, but were due solely to the adverse weather conditions which were unexpectedly encountered and which delayed the grading operations. The unusual quantities of rain which fell during March and April were an act of God, for which neither party to the contract was responsible. United States v. Brooks-Callaway Co., 318 U.S. 120, 63 S.Ct. 474, 87 L. Ed. 653; United States v. Gleason, 175 U.S. 588, 20 S.Ct. 228, 44 L.Ed. 284; cf. Parish v. United States, 98 F.Supp. 347, 120 Ct.Cl. 100, certiorari denied, 342 U.S. 953, 72 S.Ct. 625.

Plaintiff is not entitled to recover on this cause of action.

## Second Cause of Action

Plaintiff's second cause of action is based upon the alleged failure of defendant's project engineer to release to plaintiff for paving graded areas of the size specified in the contract. The contract provided that the Government would in the first instance release one complete runway to plaintiff for paving, and thereafter would make available work areas of the following size: "one half runway lengths completed for the full width of the strip [2,500 feet x 150 feet]; or an entire taxiway."

The availability of areas of work of the size prescribed in the contract was desirable in order to enable plaintiff to operate its men and equipment in the most efficient and economical manner, to make possible a continuous and coordinated grading and paving operation, and to eliminate much of the time lost in transferring men and equipment from one point of operation to another.

On May 5, 1944, the first runway, with the exception of intersections, was turned over to plaintiff for paving.

Defendant contends that shortly thereafter a conference was held between representatives of the grading contractor, of plaintiff, and of defendant concerning future releases of areas to plaintiff for paving; that an agreement was reached to henceforth release areas to plaintiff for paving as soon as they were large enough for plaintiff's operations, instead of withholding them until there was a strip of the size specified in the contract; that this agreement constituted a waiver by plaintiff of its right in the future to insist upon the release of graded areas of the size specified in the contract; and, hence, that plaintiff is not entitled to recover any increased costs of performance occasioned by working on the smaller areas.

Plaintiff denies that any such conference was ever held or that it ever agreed to waive the contract specifications in question. Instead, plaintiff insists that it was compelled by the project engineer to accept the smaller areas over its oral protests; that this action of the project engineer constituted a breach of contract in that it hindered the progress of the work and rendered its performance more expensive; and, consequently, that defendant is liable for the increased costs attributable to this action.

■ Thorough consideration has been given to the conflicting testimony relating to plaintiff's alleged waiver. We find that the preponderance of the evidence establishes that plaintiff did consent to accept smaller areas for paving. The weight of the evidence is sufficient to prove this oral modification of the written specifications.

United Steel Co. v. Casey, 6 Cir., 262 F. 889; cf. Teal v. Bilby, 123 U.S. 572, 8 S.Ct 239, 31 L.Ed. 263.

One of the most persuasive things that leads us to this conclusion is the fact that for more than two months plaintiff accepted for paving areas smaller than those specified in the contract without protest. Indeed, plaintiff's paving operations were so efficient that the grading contractor could not keep ahead of plaintiff, and if plaintiff had had to wait for one-half of a runway to be graded before any part of it was turned over to it, its men and equipment would have had to stand around idle. Plaintiff did not protest against the turning over to it of smaller areas, because to turn over smaller areas seemed to have been to plaintiff's advantage.

Plaintiff did not protest against this practice until all the work had been completed except one taxiway next to runway No. 2. This was only about 10 or 15 percent of the entire work. Its protest seems not to have been intended to stop the practice, but to lay the foundation for a claim.

Pursuant to this agreement the remaining runways and taxiways were released for paving in segments ranging in length from 1,000 to 1,500 feet.

Plaintiff is not entitled to recover on its second cause of action.

### Third Cause of Action

■ Plaintiff's third cause of action is based upon the delay which it says was caused by the failure of the contracting officer to change the specifications relative to the drainage of the area at the north end of Runway 3 when, it says, it became apparent that the specifications for such area were inadequate to cope with the conditions encountered.

The north end of Runway 3 was in marshy ground. The specifications called for certain tile and certain drainage ditches to carry off the water. The grading contractor, who was charged with the duty of getting the ground in shape for the fine grading and the paving to be done by the plaintiff, thought that the specifications for carrying off the water were inadequate, and

it recommended the installation of a herringbone tiling system, in addition to, or instead of, the one specified. The defendant's engineer on the job thought the drainage system originally specified was adequate and he refused to change it. The grading contractor from time to time renewed its recommendation, but the project engineer persisted in his refusal to change the specifications.

The work of grading this area then proceeded under the original specifications and the ground was in shape so that it could have been turned over to the paving contractor the following day, but a rain intervened. The ground became wet and boggy, and it took sixty days to get it in suitable condition. It was not put in suitable condition until after the installation of the herringbone system of tiling which had been recommended by the grading contractor. This was installed at the orders of the superiors of the project engineer, who had been called upon to canvass the situation in order to determine whether or not the original specifications were adequate. They decided they were not adequate, and the herringbone system of tiling was ordered to be installed.

In the meantime, the men and equipment of the paving contractor, the plaintiff herein, stood idle. For the consequent damages it sues. We think it is entitled to recover.

Plaintiff was in no way responsible for the delay; nor was the grading contractor; it continued to insist that the specifications for drainage were inadequate, and asked permission to install a drainage system it thought would be adequate. Defendant's engineers, the superiors of the project engineer, admitted that they were inadequate by the fact that they ordered a change in them.

■ Where a contractor suffers damage on account of faulty specifications, he is entitled to recover. United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166; Christie v. United States, 237 U.S. 234, 35 S.Ct. 565, 59 L.Ed. 933; Anthony P. Miller, Inc. v. United States, 77 F.Supp. 209, 111 Ct.Cl. 252; Stapleton v. United States,

92 Ct.Cl. 551; Steel Products Engineering Co. v. United States, 71 Ct.Cl. 457; cf. George A. Fuller Co. v. United States, 69 F.Supp. 409, 108 Ct.Cl. 70.

Except for the rain on July 21, the work might have been completed according to the original specifications without delay to the plaintiff. But the rains came, and they, and the consequent action of the defendant's engineers in changing the specifications, seem to demonstrate that the original specifications were inadequate. Because they were inadequate, defendant is liable.

This leaves the question of damages for determination.

In order to permit the installation of the herringbone system of tiling, the project engineer issued a stop order which resulted in the suspension of all paving operations from August 23 to September 19, 1944, a period of 28 days. Plaintiff was able to obtain work from the nearby city of Troy, Alabama, for eight days of this period, but its men and equipment were idle during the remaining 20 days. As a result of this delay plaintiff suffered damages totalling $16,540.76.

■ The various items of plaintiff's damage are set forth in detail in Finding No. 25. We find it necessary to discuss only the basis upon which the allowance for the rental value of plaintiff's equipment was computed. Plaintiff introduced the maximum Office of Price Administration rental rates in effect at this time as proof of the reasonable rental value of its equipment. Plaintiff then suggested that this sum should be reduced by ten percent to compensate for the absence during the period of delay of actual use of its equipment. We have held that the fair rental value of equipment rendered idle by delays attributable to the Government is a proper element of damages, and this value has consistently been reduced by fifty percent to compensate for the absence of wear and tear. Morrison-Knudsen Co., Inc. v. United States, 84 F.Supp. 282, 113 Ct.Cl. 536; Henry Ericsson Co. v. United States, 62 F.Supp. 312, 104 Ct.Cl. 397, certiorari denied, 327 U.S. 784, 66 S.Ct. 701, 90 L.Ed. 1011; Brand Investment Co. v. United States, 58 F.Supp.

749, 102 Ct.Cl. 40, certiorari denied, 324 U.S. 850, 65 S.Ct. 684, 89 L.Ed. 1410. A fifty percent reduction seems even more proper in the instant case in order to eliminate also the element of "profit to the lessor" contained in the Office of Price Administration maximum rental rates.

Plaintiff is entitled to recover a total of $16,540.76 upon this cause of action.

## Fourth Cause of Action

Plaintiff also presents a claim on behalf of its hauling subcontractor, A. G. Wimpy. Plaintiff alleges that Wimpy was damaged by the same circumstances and events set forth above in plaintiff's first two causes of action, and Wimpy has filed a claim against plaintiff for the losses thus suffered.

█ Inasmuch as plaintiff is not entitled to recover from the United States on these two causes of action, it follows that the claim of the subcontractor, presented by plaintiff must also fail. The subcontractor has no independent right of action against the defendant. Kilgore v. United States, 121 Ct.Cl. 340.

On the third cause of action, Wimpy's men and equipment were also rendered idle by the stop order issued by the project engineer to permit the correction of the faulty drainage specifications. Wimpy was also able to obtain work from the city of Troy, Alabama. He worked for the city of Troy for 14 of the 28 days of delay. Plaintiff seeks to recover on Wimpy's behalf the loss which was incurred because of the remaining 14 days of idleness.

█ A prime contractor's contract with the Government has been recognized as being sufficient to sustain an action by the prime contractor for the extra costs incurred by his subcontractor as a result of wrongful conduct of the Government. The Supreme Court in United States v. Blair, 321 U.S. 730, 737, 64 S.Ct. 820, 824, 88 L. Ed. 1039, said:

"* * * Respondent was the only person legally bound to perform his contract with the Government and he had the undoubted right to recover from the Government the contract price for the tile, terrazzo, marble, and soapstone work whether that work was performed personally or through another. This necessarily implies the right to recover extra costs and services wrongfully demanded of respondent under the contract, regardless of whether such costs were incurred or such services were performed personally or through a subcontractor. Respondent's contract with the Government is thus sufficient to sustain an action for extra costs wrongfully demanded under that contract."

Similarly, plaintiff in the instant case is entitled to recover the damages resulting from idleness, irrespective of whether such damages were incurred personally or through a subcontractor.

This conclusion is not contrary to the decisions of this court in Nils. P. Severin v. United States, 99 Ct.Cl. 435, certiorari denied, 322 U.S. 733, 64 S.Ct. 1045, 88 L. Ed. 1567; James Stewart & Co., Inc. v. United States, 63 F.Supp. 653, 105 Ct.Cl. 284; Continental Illinois National Bank v. United States, 81 F.Supp. 596, 112 Ct.Cl. 563; Continental Illinois National Bank v. United States, 101 F.Supp. 755, 121 Ct.Cl. 203, certiorari denied, 343 U.S. 963, 72 S.Ct. 1057. In these cases the subcontracts contained clauses absolving the prime contractor from liability to the subcontractor for breaches of contract, including breaches by the Government. Wimpy's contract with plaintiff does not absolve plaintiff of liability for such damages.

Accordingly, plaintiff may recover $1,490.77 as damages for the 14 days that Wimpy was kept in idleness.

Judgment upon plaintiff's first two causes of action is denied. Judgment will be entered for plaintiff upon the third and fourth causes of action in the total amount of $18,031.53 of which $1,490.77 is for the benefit of the subcontractor A. G. Wimpy.

It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN, and LITTLETON, Judges, concur.