**ERIE BASIN METAL PRODUCTS, Inc. v. UNITED STATES.**

**NATIONAL MACHINE WORKS, Inc. v. UNITED STATES.**

**INTERSTATE MACHINERY CO., Inc. v. UNITED STATES.**

Nos. 50271–50273.

United States Court of Claims.

Jan. 13, 1953.

Eugene L. Stewart, Washington, D. C., Donald O. Lincoln, Washington, D. C., on the briefs, for plaintiffs.

Mary K. Fagan, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., Donald D. Webster, Red Bluff, Cal., on the briefs, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

These cases are before us on defendant's motion for summary judgment.

It is agreed that the defendant is not entitled to summary judgment, at least at this time, in the case of Erie Basin Metal Products, Inc., v. United States, No. 50271.

This leaves for determination whether or not defendant is entitled to summary judgment in the other two cases, wherein the plaintiffs are National Machine Works, Inc., and Interstate Machinery Co., Inc., Nos. 50272 and 50273. Both of these plaintiffs were subcontractors under a contract between the defendant and the Batavia Metal Products, Inc. The National Machine Works, Inc., was also a subcontractor of Erie Basin Metal Products, Inc.

We shall consider, first the claims of these two plaintiffs as subcontractors of Batavia Metal Products, Inc.

Batavia Metal Products has not filed a petition in this court; hence, plaintiffs are not entitled to recover from the defendant for lack of privity of contract, and because the prime contractor does not sue on their behalf, unless they are entitled to recover under the Contract Settlement Act, 41 U. S.C.A. § 101 et seq. The Erie Basin Metal Products has a petition pending in the court, but it does not sue on behalf of its subcontractor National Machine Works; hence, also, National Machine Works is not entitled to recover as a subcontractor of the Erie Basin Metal Products, unless it is entitled to recover under the Contract Settlement Act. Warren Bros. Roads Co. v. United States, 105 F.Supp. 826, 123 Ct. Cl. 48, and cases there cited.

The Government entered into a contract with Erie Basin Metal Products and with the Batavia Metal Products to do for it certain work, for which the Government agreed to pay it a certain sum. How these two contractors were to carry out their contract, that is to say, whether or not they should themselves perform it or should perform it through another was of no concern to the defendant. The defendant's dealings were with Erie Basin Metal Products and Batavia Metal Products alone; it had no dealings with any subcontractor whom these contractors employed to assist in performing the contract and, hence, of course, the defendant could not be liable to them, unless it is liable under the Contract Settlement Act.

Except for the provisions of that Act, the Government had fully discharged its obligation when it paid to the prime contractor the amount it had agreed to pay it, whether or not the subcontractors were ever paid by the prime contractor. Even though the prime contractor, having received its money from the Government, refused to pay the subcontractor the amount due it, still, the subcontractor has no claim against the United States, unless it has a claim under the Contract Settlement Act.

Under section 7(d) of the Contract Settlement Act, 58 Stat. 649, 655, 41 U.S.C.A. § 107(d), the Government can become liable to a subcontractor. This section provides in part:

"* * * Any contracting agency undertaking to settle the termination claim of any subcontractor shall deliver to the subcontractor and the war contractor liable to him written notice stating its acceptance of responsibility for settling his claim and the conditions applicable thereto, which may include the release, or assignment to the contracting agency, of his claim against the war contractor liable to him; upon consent thereto by the subcontractor, the Government shall become liable for the settlement of his claims upon the conditions specified in the notice."

Thus, in order to maintain a suit under section 7(d), the subcontractor must allege in its petition and prove on the trial that the United States gave written notice to both the prime contractor and the subcontractor that it was assuming respon-

sibility for settling the claim of the subcontractor, upon the conditions set out in the notice, and that the subcontractor consented thereto. Kal Machine Works, Inc., v. United States, 68 F.Supp. 436, 107 Ct. Cl. 202. The petitions of National Machine Works and Interstate Machinery Co. do not allege the existence of any such notice from the United States. These petitions merely allege that as a result of negotiations between the United States and the prime contractors and the subcontractors the United States agreed upon the amounts at which the subcontractors' claims were to be settled, but they do not make the further allegation that the United States agreed to assume responsibility for paying this amount. It will be remembered that the Contract Settlement Act provided for a review by the Government of any settlement to be made by the prime contractor with the subcontractor, whether or not the Government assumed liability to the subcontractor. For a contractor to be entitled to recover directly against the Government it must allege and prove that the Government by the required notice assumed obligation to pay its claim. Having failed to make such allegation, plaintiffs have not brought themselves within the terms of section 7(d). Precision Metal & Machine Co. v. United States, 68 F. Supp. 437, 107 Ct.Cl. 219.

Paragraphs 651 and 662 of the Joint Termination Regulations, 10 F.R. 7985, in providing that the United States shall assume liability for the claims of subcontractors where the prime contractor is financially irresponsible, does not undertake to eliminate, if it could, the statutory requirement that the United States make a written acceptance of this responsibility. As hereinafter more fully set out, the United States may refuse to pay the subcontractor because it denies liability to the prime contractor for an amount sufficient to discharge the subcontractor's claim, or for other reasons. It does not become liable to pay him until it gives the notice assuming liability. See Paragraph 663, Joint Termination Regulations.

Plaintiffs admit that no such notice was ever issued, but they say they are entitled to recover under section 7(b) of the Contract Settlement Act, supra. This section reads:

"Whenever any contracting agency is satisfied of the inability of a war contractor to meet his obligations it shall exercise supervision or control over payments to the war contractor [ordinarily designated as prime contractor] on account of termination claims of subcontractors of such war contractor to such extent and in such manner as it deems necessary or desirable for the purpose of assuring the receipt of the benefit of such payments by the subcontractors."

The Batavia Metal Products, Inc., became bankrupt and, therefore, of course there is no question of the contracting agency's being "satisfied of the inability of * * * [this] war contractor to meet his obligations."

■ It is also plain from a reading of this section, and also from the legislative history back of the enactment of this section, that it is obligatory on the contracting agency, rather than permissive, for it to exercise the required supervision and control over payments to the war contractor when he is unable to meet his obligations. It is obligatory on the contracting agency to see to it that any payment to the war contractor on account of the termination claim of a subcontractor should get into the hands of the subcontractor.

It is true that the provision says that it shall exercise supervision and control "to such extent and in such manner as it deems necessary or desirable" in order to assure receipt of the payments by the subcontractor; but where the prime contractor is in bankruptcy, we assume that the purpose of the Act would be defeated unless the payment was made directly to the subcontractor. No other steps to assure receipt of the payments by the subcontractor could be adequate under such circumstances.

■ However, it does not follow, as plaintiffs contend, that this section makes it obligatory on the defendant to pay the termination claim of a subcontractor in case of bankruptcy of the prime contractor.

All this section provides is that, if a payment is to be made to the prime contractor for the benefit of the subcontractor, then the obligation arises to assure the receipt of such payment by the subcontractor. But, this section does not say that the defendant is obliged to pay the claim of a subcontractor whenever the prime contractor goes into bankruptcy. If a dispute arises or has arisen between the prime contractor and the defendant, and if the defendant claims that the prime contractor is not due any payment at all, or not enough to satisfy the claim of the subcontractor, then there is certainly no obligation on the part of the defendant to pay the termination claim of the subcontractor. A condition precedent to the obligation to pay the subcontractor is the acknowledgment of an obligation to the prime contractor by the Government in an amount sufficient to pay the subcontractor. If this obligation is disputed or denied, there is no obligation on the part of the Government to pay the subcontractor.

Reading section 7(b) alone, this conclusion seems inescapable. But if it is read in conjunction with section 7(d), it seems all the more apparent. The only provision of section 7 which expressly makes the Government directly liable to the subcontractor is the provision of section 7(d) which makes that liability dependent upon the issuance of a notice by the Government assuming liability upon the conditions specified in the notice. It was contemplated in section 7 that settlements ordinarily would be made between the prime contractor and the subcontractor, but that there should be a certain review by the Government of such settlements, subsection (a), and that there should be further supervision and control over the settlements where the contracting agency is satisfied of the inability of the prime contractor to meet his obligations, subsection (b). In such case the contracting agency is required to exercise such further supervision and control over the settlement between the prime contractor and the subcontractor as will assure the receipt by the subcontractor of any payment the Government may make to the prime contractor for the benefit of the subcontractor. This subsection, however, deals with settlements between the prime contractor and the subcontractor. Then in subsection (d) provision is made for the Government to settle directly, and not through the prime contractor, the termination claims of subcontractors.

Subsection (b) is concerned, as stated, with a settlement between the prime contractor and the subcontractor. It would be strange indeed if it was intended under this section that the Government should become directly liable to the subcontractor without the issuance of a notice assuming such liability, since such a notice is expressly required by section 7(d) providing for direct settlements.

To repeat, we think the extent of the Government's liability under section 7(b) is to see to it that any payment it makes to the prime contractor for the benefit of the subcontractor should get into the hands of the subcontractor. But before this obligation arises, the Government must make the payment to the prime contractor, or decide that one is due and owing. If it decides that no payment is due the prime contractor and refuses to make a payment to it, then no obligation arises on it to pay the subcontractor. The Government's obligation is to the prime contractor and any obligation it may incur to the subcontractor under the Contract Settlement Act is contingent and dependent upon its obligation to the prime contractor. Never can the subcontractor successfully maintain an action against the Government until the Government's obligation to the prime contractor is established, or the required notice is issued.

We do not think the regulations relied upon by the plaintiffs change this situation in any respect, even if they could. Nor do we think that the Appeal Board, Office of Contract Settlement, intended to hold differently in the case cited by plaintiffs, Ohio Casket Hardware Co., Inc., d/b/a Allen Tool & Mfg. Co., v. War Department, 1 App.Bd., OCS No. 21 (1946). If

it did mean to hold to the contrary, we decline to follow it.

The claim of National Machine Works, as a subcontractor under Erie Basin Metal Products, differs from the case of this company and of the Interstate Machinery Co., as subcontractors of Batavia Metal Products in one respect only: In this case also the defendant did not assume direct liability to the subcontractor, but the settlement was made between the prime contractor and the subcontractor, and it was contemplated that the subcontractor would be paid by the prime contractor. A special account had been set up at the American National Bank and Trust Company of Chicago, Illinois, which could be drawn upon only by the Erie Basin Metal Products on the countersignature of the contracting agency. After the amount due had been agreed upon and had been approved by the contracting agency, it requested the Erie Basin Metal Products to draw its check on this account to pay the amount agreed upon, and to forward it to the Chicago Chemical Warfare Procurement District, a branch of the contracting agency, for countersignature. The Erie Basin Metal Products did so. But in the meantime something happened to cause the contracting agency to decide that it would not make the payment, and the Chicago Chemical Warfare Procurement District, a branch of the contracting agency, refused to countersign the check. There was no assumption of liability by the Government and the account could not be drawn upon until the check was countersigned. No notice was issued agreeing to make direct settlement and, hence, defendant is not liable on this cause of action.

It results that defendant's motion for summary judgment as to plaintiffs National Machine Works, Inc., and Interstate Machinery Co., Inc., must be granted, and that summary judgment in the case of Erie Basin Metal Products, Inc., must be denied.

It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN, and LITTLETON, Judges, concur.