626 F.2d 990

**W. G. CORNELL COMPANY OF WASHINGTON, D. C.**

v.

**CERAMIC COATING COMPANY, INC., Appellant.**

**W. G. CORNELL COMPANY OF WASHINGTON, D. C., Appellant**

v.

**CERAMIC COATING COMPANY, INC.**

Nos. 79–1039, 79–1041.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 10, 1979.

Decided March 17, 1980.

Joel M. Finkelstein, Washington, D. C., with whom Peter B. Krauser, Washington, D. C., was on brief, for appellant in No. 79–1039 and appellee in No. 79–1041.

Jack Rephan, Washington, D. C., with whom Herman M. Braude, Washington, D. C., was on brief, for appellee in No. 79–1039 and cross-appellant in No. 79–1041.

Also Charles W. Bills, Washington, D. C., entered an appearance for appellant in No. 79–1039 and appellee in No. 79–1041.

Before TAMM and MIKVA, Circuit Judges, and GREENE,* United States District Judge for the District of Columbia.

Opinion for the Court PER CURIAM.

PER CURIAM:

This is an appeal from a decision of the district court in a breach of contract and warranties case. We affirm the district court on the issue of liability but remand certain portions of the damage award for

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

entry of judgment in accordance with this opinion.

## I. FACTS

Ceramic Coating Co., Inc. (Ceramic) is a Kentucky corporation engaged in the business of lining metal pipe with glass-like coatings which reduce friction in the pipe's interior. W. G. Cornell Co., Inc. (Cornell), a Maryland corporation, brought suit in the district court against Ceramic on the basis of diversity jurisdiction seeking damages for breach of contract and breach of express and implied warranties in connection with Cornell's purchase of some glass-lined ductile iron pipe from Ceramic. The pipe was purchased for installation by Cornell in two related projects at the Blue Plains water purification plant in Washington, D.C.

Installation of the pipe supplied by Ceramic began on the first project in late 1972 and was completed in 1974. However, the installation was not tested at that time pursuant to an understanding with the District of Columbia that the system could only be properly tested after the related project was completed. This was accomplished in May, 1975 and testing was commenced. That portion of the system constructed with normal cement-lined pipe was found to operate satisfactorily. The other portion, consisting of Ceramic's pipe, was found to be leaking from bolt holes located on the flanges.

An examination of the pipe revealed that the flange faces were warped, creating a cup effect around the 1/16″ gasket used by Cornell to install the pipe. Cornell replaced the 1/16″ gaskets with a 1/8″ size; this process consumed approximately six months. When the system was next tested, the bolt-

hole leakage had ceased, but there were new leaks from the pipe threads, particularly in the large diameter pipes. Cornell was eventually able to stop this leakage by application of an epoxy. With the District of Columbia's agreement to reduce the pressure requirements specified in the contract, the system finally passed inspection one year after the scheduled system completion date.

## II. LIABILITY

■ The district court found that the pipe was properly installed by Cornell and that the leakage was caused by warpage of the flange faces which prevented sufficient pressure from being put on the gaskets. The court further found that Ceramic was aware of the possibility of warpage resulting from the heating and cooling process used to apply the glass lining to the pipe, and of the tendency of the process to embrittle the pre-applied sealant which otherwise would have acted as a safeguard against leakage. The district court thus concluded that Ceramic breached the contract and certain implied and express warranties [1] in that the pipe failed to meet the performance specifications in the contract. Based upon our examination of the trial record we cannot say that these findings are so clearly erroneous as to justify reversal. We thus affirm the district court's holding as to liability.

## III. DAMAGES

The trial court awarded actual, incidental and consequential damages to Cornell in the amount of $190,290.96, off-set by $23,089.74 which the court found still owing to Ceramic under the contract, resulting in a net

---

1. Among the express warranties the court found Ceramic had breached was a statement in a sales brochure that the glass-lined pipe could be installed "exactly like regular cast iron pipe." Since regular cast iron pipe is installed with 1/16″ gaskets, this would bolster the trial court's finding of proper installation by Cornell.

Ceramic hotly disputes this finding, arguing that the brochure was clearly not intended to constitute installation instructions, in that the brochure specifically referred to use of the pipe

for carrying sludge and scum, which have substantially lower viscosity than water. However, even if Ceramic's argument that the brochure was not an express warranty were accepted, it does not follow that the pipe was not properly installed using 1/16″ gaskets. Furthermore, there was other evidence sufficient to sustain the trial court's finding that the pipe, as installed by Cornell, would not have leaked except for the warpage.

award to Cornell of $167,201.22. This figure includes, *inter alia*, $65,409.30 to cover the costs of keeping a job superintendent and foreman assigned to the Blue Plains project during the one year delay in completing installation of the pipes; $34,172.36 for clean-up costs after the job was completed; and $43,510.39 for the fair rental value of machinery and equipment forced into idleness at the job site. The trial court refused, however, to award Cornell an additional $122,002.13 for overhead allocable to the project during the one-year delay. We will discuss these elements of the damage award in turn.

### A. *Labor Costs*

In support of its claim for the cost of keeping a superintendent and foreman on the payroll during the delay period, Cornell presented testimony that these employees were necessary because they were familiar with the projects and would be needed once the repairs were completed to put the system into operation. Ceramic urges, however, that Cornell failed to prove that it could not have mitigated these damages by retraining other employees or finding other temporary work for these employees.

It is well established that the burden of proving damages could have been mitigated falls on the party who breached the contract. 5 A. Corbin, Contracts § 1039 (1963), *Jackson v. Wheatley School District*, 464 F.2d 411 (8th Cir. 1972) (Wrongfully terminated employee does not have burden of showing he couldn't take another job so as to mitigate his damages); *Hardwick v. Dravo Equipment Co.*, 279 Or. 619, 569 P.2d 588 (1977). Having failed to carry this burden, or even raise the question at trial, Ceramic cannot now claim that the award was improper for failure to mitigate.

### B. *Clean-Up Costs*

Cornell's claim for clean-up costs is based solely on the evidence presented by one witness who testified as to the total amount expended on clean-up. However, this witness stated that he did not know what portion of these costs was attributable

to the delay caused by the defective pipes. In fact, the trial judge specifically suggested that Cornell present another witness who could testify as to the allocation. This Cornell failed to do.

It is clear in contract law that a plaintiff is not required to prove the amount of his damages precisely; however the fact of damage and a reasonable estimate must be established. 5 A. Corbin, Contracts § 1020 (1964); Restatement of Contracts § 331 (1932). Cornell failed to present any evidence that clean-up was made more onerous by Ceramic's breach or of the cost attributable to the assertedly added burden. Having failed to present such evidence at trial, Cornell has not shown that it was damaged, and certainly cannot be permitted to recover the full amount of its clean-up costs. This portion of the damage award is therefore reversed.

### C. *Idle Machinery*

The sum awarded by the trial court for the loss occasioned by tools and machinery left idle at the job site is challenged by Ceramic on the grounds (1) that the court should not have used fair rental value of the machinery as a measure, and (2) that it should have reduced any amount awarded by the wear and tear which the machinery would have suffered had it in fact been in use.

With respect to the use of fair rental value, Ceramic did not object to this standard at trial when evidence of these amounts was introduced by Cornell. Furthermore, although using Associated General Contractor rates may well have been preferable, *L. L. Hall Construction Co. v. United States*, 379 F.2d 559, 177 Ct.Cl. 870 (1966); *Cornell Wrecking Co. v. United States*, 184 Ct.Cl. 289, 291 (1968), the use of rental value is not so unreasonable as to warrant reversal as clear error. Indeed, fair rental value has been used in other cases to measure such damages. *E. g., Laburnum Construction Corp. v. United States*, 325 F.2d 451, 163 Ct.Cl. 339 (1963); *Warren Brothers Roads Co. v. United States*, 105 F.Supp. 826, 123 Ct.Cl. 48 (1952);

*Morrison-Knudsen Co. v. United States,* 84 F.Supp. 282, 113 Ct.Cl. 536 (1949); *Henry Ericsson Co. v. United States,* 62 F.Supp. 312, 104 Ct.Cl. 397 (1945), *cert. denied,* 327 U.S. 784, 66 S.Ct. 701, 90 L.Ed. 1011 (1946); *Brand Investment Co. v. United States,* 58 F.Supp. 749, 102 Ct.Cl. 40 (1944), *cert. denied,* 324 U.S. 850, 65 S.Ct. 684, 89 L.Ed. 1410 (1945). Thus Ceramic cannot properly raise this objection for the first time on appeal. *General Insurance Co. of America v. Hercules Construction Co.,* 385 F.2d 13, 22 (8th Cir. 1967).

■ We find Ceramic's second objection more persuasive. The district court should have reduced the rental value award by some amount to reflect the lack of actual use with its resulting wear and tear. The standard formula to accomplish this is to reduce the award by 50%. As stated by the court in *Warren Brothers Roads, Co., supra,* 105 F.Supp. at 830, responding to the argument that the rental value for idle equipment should be reduced by only 10%, "We have held that the fair rental value of equipment rendered idle by delays . . . is a proper element of damages, and this value has consistently been reduced by fifty percent to compensate for the absence of wear and tear." The court noted that a 50% reduction is even more appropriate where, as in this case, rental values are used, "in order to eliminate also the element of 'profit to the lessor.'" *Accord, Laburnum Construction Corp., supra; L. L. Hall Construction Co., supra; Morrison-Knudsen Co., supra; Henry Ericsson Co., supra; Brand Investment Co., supra; Cornell Wrecking Co., supra.* In the absence of any evidence to the contrary, this is a reasonable method of estimating such costs and should have been applied by the trial court. Accordingly, the damages for idle machinery are reduced by one-half.

### D. *Overhead Costs*

■ The trial court declined to award Cornell its estimated overheard costs allocated to this project over the one-year delay. While Cornell is correct in its contention that such damages can, under appropri-

ate circumstances, be awarded, *Brand Investment Co., supra,* the trial court found that the circumstances here were not appropriate. Specifically the court found that "[p]laintiff has not shown that the one-year delay caused by defendant's breach of contract and warranty kept plaintiff from obtaining other jobs to absorb the unallocated overhead." Conclusion of Law No. 15. The trial court also found that "[p]laintiff adduced no evidence that it refrained from bidding other jobs because of the delay on the 33B and 33D jobs." *Id.*

■ In *Kansas City Bridge Co. v. Kansas City Structural Steel Co.,* 317 S.W.2d 370 (Mo.1958), the court held that in order to recover overhead costs a plaintiff must establish not only that a portion of his resources were unavailable for other projects due to the delay, but also that other jobs which could have covered his overhead costs were in fact available. This burden of proof has been considered "exacting" by some courts, *e. g., General Insurance Co., supra,* 385 F.2d at 23, and rejected as an aberration by others. *E. g., Southern New England Contracting Co. v. State,* 165 Conn. 644, 345 A.2d 550 (1974). However, even if a plaintiff is not held to the standard of proof required in *Kansas City Bridge,* this does not mean overhead costs can be recovered automatically whenever there is a delay in completing a job. In order to recover, the plaintiff must show, at the minimum, that the delay somehow affected plaintiff's operations so that it was not practical to undertake the performance of other work even had it been available.

■ There is scant evidence on the record as to how the delay necessitated by the breach affected Cornell's operations. Since establishing the fact of damages is the responsibility of plaintiff, in the absence of any such testimony we cannot conclude that the trial court's finding that Cornell did not bear its burden of showing it was prevented from obtaining other jobs is clearly erroneous. We thus affirm the trial court's denial of overhead costs.

### IV. CONCLUSION

■ Of the remaining elements of the damage award, Ceramic contests only the

$27,998.90 awarded for the cost of leakage repair including replacement of gaskets and application of epoxy. In light of our affirmance of the trial court's finding of liability on the part of Ceramic, such costs are clearly recoverable.

Ceramic also made a general challenge to the Court's award on the basis that Cornell unreasonably delayed in testing the pipe, which contributed to the one-year overall delay in making the system operational. However, there was unrefuted testimony to the effect that the system could not have been properly tested at an earlier date, and thus the trial court's finding that the one-year delay was caused by Ceramic's breach is not lacking in evidentiary support.

We affirm the district court on the issue of liability; we remand to the district court those portions of the damage award discussed above for entry of judgment in accordance with this opinion.

*Affirmed in part, remanded in part with instructions.*