HARGIS CANNERIES, Inc., v.
UNITED STATES.
Clv. A. No. 435.

District Court, W. D. Arkansas,
Fort Smith Division.

Feb. 1, 1945.

G. T. Sullins, of Fayetteville, Ark., for plaintiff.

Clinton R. Barry, U. S. Atty., and Thomas C. Pitts, Asst. U. S. Atty., both of Fort Smith, Ark., for defendant.

MILLER, District Judge.

The complaint was filed March 31, 1944, and after the disposal of some preliminary motions the defendant filed its answer on September 14, 1944, and on September 20, 1944, the plaintiff filed its motion for judgment on the pleadings. Rule 12(c), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The motion for judgment on the pleadings admits all facts well pleaded, but does not admit conclusions of law; facts which the court will take judicial notice are not true; legally impossible facts; facts which would be inadmissible in evidence in the event of a trial nor facts which might appear by a record or document included in the pleadings to be unfounded. Cohen v. United States, 8 Cir., 129 F.2d 733; Rosenhan v. United States, 10 Cir., 131 F.2d 932.

The facts disclosed by the pleadings and exhibits thereto are as follows:

Plaintiff is a corporation, organized and doing business under the laws of the State of Arkansas with its principal place of business at Fayetteville in that State.

On or about the first day of June, 1942, plaintiff entered into a contract with the defendant through the California Quartermaster Depot, E. J. Brugger, Major, Q. M.C., purchasing and contracting officer, for the sale of 10,000 dozen No. 10 cans of blackberries at the price of $6 per dozen. The contract provided that final delivery should be made not later than June 30, 1943. Under the contract plaintiff delivered to the defendant 3600 dozen cans at $6 per dozen and 1590 dozen cans at $5.69 per dozen.

On September 13, 1942, the contracting officer wrote plaintiff terminating plaintiff's right to make further deliveries and proceeded to purchase enough blackberries from other packers to complete the contract and paid other packers a price in excess of the contract price to be paid the plaintiff in the sum of $8,730.81.

The defendant has withheld the sum of $8,730.81 from plaintiff and has refused to pay the plaintiff said sum, but is withholding said money as damages by reason of condition 2 of the contract entered into between plaintiff and defendant.

Plaintiff alleges that the blackberries were not furnished according to contract

by reason of unforeseeable circumstances and causes beyond its control and without fault or negligence on its part; that the weather conditions were such as to make it impossible to pack the amount of blackberries provided for in the contract within the time provided therein or during the year 1942, and that under condition 2 of said contract it is relieved from complying with the contract and is not liable to the defendant for any excess cost on account of its failure to make deliveries because of the circumstances and conditions which prevented it from fulfilling the contract.

Condition 2 of the contract reads as follows: "If the contractor refuses or fails to make deliveries of the materials or supplies within the time specified, or any extension thereof, the Government may by written notice terminate the right of the contractor to proceed with deliveries or such part or parts thereof as to which there has been delay. In such event, the Government may purchase similar materials or supplies in the open market or secure the manufacture and delivery of the materials and supplies by contract or otherwise, and the contractor and his sureties (if any) shall be liable to the Government for any excess cost occasioned the Government thereby: Provided, that the contractor shall not be charged with any excess cost occasioned the Government by the purchase of materials or supplies in the open market or under other contracts when the delay of the contractor in making deliveries is due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God or of the public enemy, acts of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, unsually severe weather, and delays of a subcontractor due to such causes unless the contracting officer shall determine that the materials or supplies to be furnished under the subcontract are procurable in the open market, if the contractor shall notify the contracting officer in writing of the cause of any such delay, within 10 days from the beginning thereof, or within such further period as the contracting officer shall, with the approval of the head of the department of his duly authorized representative, prior to the date of final settlement of the contract, grant for the giving of such notice. The contracting officer shall then ascertain the facts and extent of delay, and his findings of fact therein shall be final and conclusive on the parties hereto, subject only to appeal within 30 days by the contractor to the head of the department concerned or his duly authorized representative, whose decision on such appeal as to the facts of delay shall be final and conclusive, on the parties hereto. As used herein 'head of department' means the head or any assistant head of the executive department or independent establishment involved, and 'his duly authorized representative' means any person authorized to act for him other than the contracting officer; and the term 'contracting officer' shall include his duly appointed successor or his authorized representative."

After the defendant had terminated the contract, the plaintiff made application to the California Quartermaster Depot for release of liability and for payment to it of the sum of $8,730.81, purchase price of the blackberries delivered by plaintiff and accepted by defendant under the contract. The matter was submitted to the contracting officer who made the following findings of fact:

"Findings of Fact

"December 22, 1942

"1. In response to radio of this office dated May 30, Hargis Canneries, Inc., offered 10,000 doz. cans. @ $6.00 per doz., drained weight 65 ounces. Offer was accepted by radio of June 1, and above contract awarded. Change Order "B" reduced the unit price of 1590 dozen cans to $5.69 to compensate for a lower average drained weight.

"2. On August 14, 1942, contractor notified this office that due to an insufficient supply of blackberries, he would be unable to complete delivery. Further information was furnished that a little over 11,000 cases had been packed, ·that 10266 cases were in suitable condition to be applied against the contract, and that in an effort to secure more berries, several canners in the territory had been contacted.

"3. On September 15, 1942, the following shipment was received by the Government, F.O.B. Fayetteville, Arkansas:

2,600 doz. cans @ $6.00 per dozen
1,500 doz. cans @ $5.69 per dozen

"4. By letter of September 13, 1942, this office terminated contractor's right to make further delivery, and purchase of 3,751,800 ounces was made from R. D.

Bodle Company, Seattle Washington, on contract W 1307 qm–2858, SS–2260, dated September 24, 1942, at the price of $.0100194 per ounce, involving an excess cost of $8,730.81.

"5. In reply to request of this office for remittance of above amount, contractor protested charge of excess cost and requested relief from penalty under Article 2 of the contract, claiming that default was due to unusually severe weather. He states that every effort had been made to secure additional berries, and that this depot had received all available berries. In support of his case, contractor submitted letters from Sam B. Schneider, Tulsa Radio Station KVOO Farm Editor; C. A. Border, Manager Agricultural Department, Tulsa Chamber of Commerce and President of N. E. Oklahoma Fruit & Berry Growers Association; W. A. Markham and Verser Hicks, blackberry growers,. to the effect that severe rains seriously damaged and curtailed the blackberry crop and interfered with picking.

"6. The U. S. Department of Agriculture, A.M.A., Fayetteville, Arkansas, furnishes the information that the large number of government contractors, many of whom were not regular blackberry packers, competing for a limited crop caused several canners to fall short on their contracts; also, that 'The month was unusually wet for June, the average rainfall for the State, 6.69 inches, being the greatest since 1932 * * *.' With specific reference to the case of Hargis Canneries, Inc., the A.M.A. representative at Fayetteville states: 'I know this contractor purchased blackberries from other districts within a 200 mile radius, and also had another contractor pack some for him. I was very favorably impressed with the effort that they were making during the packing seasons and believe that they secured all of the raw stocks available, regardless of price, and continued to operate after most others had closed down.'

"7. I therefore find that failure of Hargis Canneries, Inc., to complete delivery under contract No. W 1307 qm–890, S–1788, was due to unforeseeable causes beyond the control and without the fault or negligence of the contractor.

"/s/ E. J. Brugger
"Major, Q. M. Corps
"Contracting Officer."

The General Accounting Office of defendant has failed and refused to recognize the findings of fact as final, conclusive and binding upon the defendant and has refused to pay plaintiff the said sum of money.

Judgment is asked for the sum of $8,-730.81, together with interest from December 22, 1942.

The answer of the defendant admits that the findings of fact by the contracting officer are as set forth in the complaint and that in so far as "they are actually findings of fact and not conclusions of law, are correct and binding upon the defendant herein, that is to say it admits that the findings of fact Numbered 1 through 6 are true and correct and binding upon the defendant, but denies that finding No. 7 is a 'finding of fact' and further denies that it is binding upon the defendant."

The defendant further pleads that it is justified in charging the plaintiff with the excess cost occasioned by its purchase of blackberries on the market under the express provisions of condition 2 of the contract, and "that the plaintiff was not excused for the breach of said contract by the finding of fact of the contracting officer and that said findings of fact are not binding upon the defendant for the following reasons, to-wit: 'That condition No. 2 of said contract excused the plaintiff herein only for delays in delivery of the canned blackberries mentioned therein under certain conditions but did not purport to excuse the plaintiff from liability for excess costs in the event of an entire failure of delivery, and that the default of the plaintiff amounted to a failure of delivery rather than a delay in delivery, and that the contracting officer, therefore, had no authority under any circumstances under said contract to excuse the plaintiff for its failure to make delivery."

That the seventh finding of fact is a conclusion of law and is erroneous in that it is not supported by the factual findings upon which it is based because the plaintiff's failure to make delivery was due to excessive rains in the region of the plaintiff's operations which caused a short crop thus preventing plaintiff from obtaining the requisite quantity of blackberries in the vicinity of its operations; that the possibility of said adverse weather conditions which would prevent the plaintiff from obtaining the requisite quantity of berries in the vicinity of its operations was, as a mat-

ter of law, a foreseeable possibility and involved a risk assumed by the plaintiff when it entered into said contract.

That the contracting officer exceeded his authority under the contract by holding that an impossibility of obtaining the requisite amount of blackberries in the immediate vicinity of plaintiff's operations was an excuse for plaintiff's failure to furnish the amount called for in the contract.

Respective counsel have filed excellent typewritten briefs and arguments. They have cited authorities to sustain their various contentions, but in view of the admissions of parties and the facts as disclosed by the record it appears unnecessary to separately discuss each contention of counsel.

Under the contract the berries were to be delivered "F.O.B. cars, Fayetteville, Arkansas." On August 14, 1942, the plaintiff notified the defendant that it was unable to complete delivery due to an insufficient supply of blackberries and on September 13, 1942, the defendant terminated the plaintiff's right to make further delivery, and proceeded through its contracting officer "to ascertain the facts and extent of delay".

■ The defendant in its answer and on its written brief filed herein concedes that findings one to six, inclusive, involve questions of fact and are conclusive. It further contends that finding seven is not a finding of fact but is one of law for the court to determine.

Under the facts which the defendant admits are conclusive, was the failure of plaintiff due to "unforeseeable causes beyond the control and without the fault or negligence of the contractor" (plaintiff)?

The parties did not stipulate that the contracting officer should determine any question of law that might arise in the performance of the contract but did agree to be bound by the findings of fact and the findings are that the weather in the territory adjacent to the shipping point was unusually severe; that the "severe rains" seriously damaged and curtailed the blackberry crop; that the average rainfall in the State during June was the greatest since 1932, a period of ten years and that the plaintiff secured all of the raw stocks available, regardless of price within a radius of 200 miles.

The fact-finding officer in finding seven summarized the findings "that failure of Hargis Canneries, Inc., to complete delivery under contract No. W 1307 Q. M. 890, S 1788, was due to unforeseeable causes beyond the control and without the fault or negligence of the contractor."

There is no suggestion of fraud or such gross mistake as would necessarily imply bad faith, or failure to exercise honest judgment on the part of the officer designated to ascertain the facts, and under the admissions of counsel for defendant, such findings of fact are conclusive that the delay and ultimate failure to make full delivery of the blackberries was due to unforeseeable causes.

■ In the case of United States v. Brooks-Callaway Co., 318 U.S. 120, 63 S.Ct. 474, 475, 87 L.Ed. 653, the court had under consideration a contract which provided that the contractor should not be charged with liquidated damages because of any delays in the completion of the work due to "unforeseeable causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God, or of the public enemy, acts of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather or delays of subcontractors due to such causes."

The court there said: "The purpose of the proviso is to remove uncertainty and needless litigation by defining with some particularity the otherwise hazy area of unforeseeable events which might excuse nonperformance within the contract period. Thus contractors know they are not to be penalized for unexpected impediments to prompt performance, and, since their bids can be based on foreseeable and probable, rather than possible hindrances, the Government secures the benefit of lower bids and an enlarged selection of bidders."

It is immaterial whether finding seven be termed a conclusion of law or a finding of fact since the fact-finding officer definitely found the failure on the part of the plaintiff to make delivery of the blackberries was due to an unforeseeable cause, he is entitled to judgment against the defendant for the sum sued for exclusive, however, of interest, and a judgment for said sum is being entered against the defendant for the sum of $8,730.31.