## HOLLAND CO. v. AMERICAN STEEL FOUNDRIES.

### No. 10321.

United States Court of Appeals, Seventh Circuit.

June 7, 1951.

As Amended on Denial of Rehearing July 3, 1951.

L. B. Mann, Casper W. Ooms, Chicago, Ill., for appellant.

Geo. I. Haight, Edward A. Haight, and Orrin O. B. Garner, all of Chicago, Ill., for appellee.

Before DUFFY, FINNEGAN, and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

In the District Court, plaintiff charged defendant with infringement of Claim 10 of the patent to Goodwin 2,053,989, issued September 8, 1936. Defendant asserted invalidity and noninfringement. The District Court found that defendant had not infringed and, believing it unnecessary, therefore, to pass upon the defense of invalidity, declined to consider the latter and, though expressing doubt as to validity, made no findings or conclusions as to novelty, utility or patentable invention, essentials of validity. Consequently, the only issue within the scope of the review here is that of infringement.

In his specifications and description Goodwin stated that his invention related to trucks for railroad cars and more particularly to the usual freight car type of truck and said that one of his objects was to provide a "truck having means to absorb energy caused by the vertical oscillation of the parts supported by the truck springs, so as to minimize * * * the accumulative roll of car bodies at critical train speeds wherein the rocking time interval * * * synchronizes with the time interval of passing of rail joints or other low spots in the track when low spots or rail joints are staggered"; that another object was "to absorb energy both while the spring is being compressed and during the recoil", and to provide the mechanism in "an inexpensive way and of simple construction".

It is clear from the entire document that Goodwin intended to provide in a freight car truck friction means built in the truck, so functioning as to dampen or lessen the vibration or oscillation of supporting coiled freight car springs and as to prevent destructive bouncing when the natural period of vibration of the springs coincides with the impacts of the truck-wheels upon the staggered joints of the railroad track at critical speeds. Documentary evidence in the record reflects a history of discouraging experience on the part of railroads prior to issuance of this patent, arising from injury

to carried freight caused by this so-called "bouncing". The industry recognized that improvement was necessary in order to eradicate serious damage to cargoes. It was Goodwin's purpose, by his device, to lessen or dampen the rebounding or bouncin effect and thus reduce the jolting of freight carried in the cars and avoid damage thereto.

Claim 10 is as follows: "In a car truck, a side frame, a bolster, springs on said side frame for supporting said bolster, friction means on said side frame, friction shoes engageable with said means, and wedging means on said bolster comprising space, oppositely sloping bolster walls for urging said shoes against said friction means to dampen vibrations of said springs." The District Court described the operation of Goodwin's first described embodiment as follows: "As a load is imposed on the truck, there is a resultant cushioning in the truck springs; as the truck springs are compressed downward through the imposition of a load, * * * the bolster has a tendency to move downward on the cushioning truck springs; as the bolster commences to move downward it bears solely on the friction shoes through the medium of sloping bolster walls on each side; due to the resistance of the truck springs, there is then set up a force between the motion of the bolster downward and the resistance to it upward from the truck springs, and by virtue of the sloping bolster walls the shoes are forced outwardly until they come into engagement with the friction plate on the side frame; that friction resistance will retard the movement of the bolster downward and upward and thereby destroy the possibility of resonance being built up in the truck springs." It referred to his second embodiment thus: "The second embodiment of plaintiff's device, * * * is essentially the same as the preceding one," and continued: "A third embodiment is illustrated in Figure 8 of the patent. The function of the device is, for all practical purposes, identical with that previously described except that there has been added a horizontal coil spring which tends to urge the friction means on the side frame against the face of the friction shoe."

Thus it will be seen, as the evidence clearly indicates, that the sloping walls upon the bolster, acting in cooperation with the oppositely placed sloping walls of the friction plates, serve to retard the dominant thrust as the carrying springs are compressed.

In the first two embodiments mechanical equivalents, the friction resistance created by contact of the two cooperating slanting or sloping walls was accomplished without any supplementary means. In the other embodiment, as the trial court noted, the patentee added horizontal coil springs which tend to urge the friction plate on the side frame toward the friction shoe cooperating with the bolster. Obviously the only difference between the two different embodiments is that in the one last described an additional friction force is supplied by the supplementary springs, acting in a horizontal direction, thus increasing the pressure of the friction shoe horizontally toward the bolster, as the wedged sides of the latter and of the friction plates come in contact. In each case friction from the side walls exists because the parts come into wedge; they come in contact and wedge together; but, in the second, the friction, with its retarding or dampening effect, is increased by the addition of the horizontally placed springs. This, to our minds, is a difference in degree only, so that each embodiment is within the claim. It seems to us clear that if one has a device supplying the friction arising from the wedging but without horizontal springs, if he desires to increase the friction he may do so at any time by any appropriate means supplied to the side walls to furnish that purpose. So, it seems to us, the court was in error in holding that defendant's device, which embraces all the elements included in the third embodiment of Goodwin, did not infringe because it includes the independent additional springs to furnish supplemental or additional friction.

Though certain other claims of Goodwin's patent included the horizontal springs, Claim 10 did not and, therefore, the court was led into error in believing that the additional friction means supplied by the independent additional springs took defendant's device outside the claim. The central

vital thought of Goodwin was that the wedge-shaped parts, acting one against the other would achieve elimination of possibility of damage to cargo. This conception is adopted in its entirety by defendant in its construction, and it can not escape infringement of the claim teaching the central idea merely because it has added thereto by increasing the friction on the side walls by using independent additional springs. As we have said, this is a difference only in degree. We think the court was clearly in error in holding that defendant did not infringe.

■ This brings us to the question of validity. As we have said, the District Court, though expressing doubt as to validity, made no express finding on that issue. Concerning such a situation, in Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327 at page 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644, the Supreme Court said: "There has been a tendency among the lower federal courts in infringement suits to dispose of them where possible on the ground of non-infringement without going into the question of validity of the patent. Irvin v. Buick Motor Co., 8 Cir., 88 F.2d 947, 951; Aero Spark Plug Co. v. B. G. Corp., 2 Cir., 130 F.2d 290; Franklin v. Masonite Corp., 2 Cir., 132 F.2d 800. It has come to be recognized, however, that of the two questions, validity has the greater public importance, Cover v. Schwartz, 2 Cir., 133 F.2d 541". Thus, under circumstances similar to those here, in Helbush v. Finkle, 9 Cir., 170 F.2d 41, 42, in a patent suit where the District Court had held that defendant did not infringe but had left undetermined the question of validity of the claims involved, the Court of Appeals said: "The question of validity of the claims here involved cannot properly be determined on this appeal. Such a determination would necessitate findings on questions on which the District Court has made no findings—the question of novelty and the question of invention, both of which are questions of fact. Such findings should be made by the District Court, not by this court", citing Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S.

327, 65 S.Ct. 1143, 89 L.Ed. 1644; Measurements Corp. v. Ferris Instrument Corp., 3 Cir., 159 F.2d 590; Oswego Falls Corp. v. American Seal-Kap Corp., D.C.E.D.N.Y. 65 F.Supp. 338; Sunlite Mfg. Co. v. Clarvan Corp., D.C.E.D.Wis., 73 F.Supp. 938. See also Marshall v. Marshall, 81 U.S.App. D.C. 404, 160 F.2d 6; Campbell v. Campbell, 83 U.S.App.D.C. 237, 170 F.2d 809; Ordinary of State of New Jersey v. U. S. F. & G. Co., 3 Cir., 136 F.2d 536. And in Doble Engineering Co. v. Leeds & Northrup Co., 1 Cir., 134 F.2d 78, at page 89, the court announced: "The questions of fact necessarily raised by any consideration of the question of validity are exceedingly complicated and involved and the answer to be given to them depends in large part upon the credibility of expert and other witnesses. Under these circumstances it seems to us that the question of the validity of the claim as now construed is definitely one of fact and as such should be passed upon by * * * the court below in advance of consideration by us." A reviewing court may always send a case back under appropriate circumstances for further findings. Kelley v. Everglades Drainage District, 319 U.S. 415, 63 S.Ct. 1141, 87 L.Ed. 1485; United States v. Brooks-Callaway Co., 318 U.S. 120, 63 S.Ct. 474, 87 L.Ed. 653; Mishawaka Rubber & Woolen Co. v. Kresge Co., 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381.

■ The judgment of noninfringement is reversed. The cause is remanded with directions to make appropriate findings upon the issue of validity.

On Petition for Rehearing.

Among other contentions, defendant suggests on petition for rehearing that the court misapprehended the structure of defendant's product by describing its so-called "ride control springs" as horizontal. The use of the word "horizontal" was indeed unfortunate, as defendant's independent springs are physically vertical. However, the court had in mind the ultimate effect of these springs. Our conception is that defendant's extra or independent springs tend to hold the wedge-shaped friction shoes

against the sloping bolster walls, which in turn urge them against the friction plates on the side frame. Thus the ultimate effect is horizontal in character due to the wedge-shaped parts, bringing defendant's device well within the patentee's conception.