Axel Harald HOLSTENSSON et al., Plaintiffs,

v.

V–M CORPORATION, Defendant.

Civ. A. No. 2527.

United States District Court
W. D. Michigan, S. D.

Aug. 28, 1961.

Donald J. Simpson, Hill, Sherman, Meroni, Gross & Simpson, Lewis T. Steadman, Chicago, Ill., Robert G. Howlett, Schmidt, Smith, Howlett & Halliday, Grand Rapids, Mich., for plaintiffs.

John A. Dienner, Edward C. Grelle, Thomas R. Juettner, Brown, Jackson, Boettcher & Dienner, Chicago, Ill., Joseph D. Hartwig, Benton Harbor, Mich., for defendant.

KENT, Chief Judge.

This suit involves the validity of United States Patent No. 2,291,158 issued to Axel Harald Holstensson on July 28, 1942. The action is instituted for damages alone and there is no request for an injunction against infringement of the patent since the patent has expired.

It is the theory and claim of the plaintiffs that the patent is valid and has been infringed by the defendant.

It is the defendant's claim that the patent is invalid as having been anticipated by the prior art and that there was a claim made in the United States application which was not included in the basic Swedish application and therefore the American application was overclaimed.

It is the theory and claim of the defendant that this is a combination patent which includes known elements previously used in the art and that there are no new elements included.

It is the further theory and claim of the defendant that the devices which it manufactures are so different in conception that there is no infringement.

### Facts

The patent in suit is based upon a previous application filed in Sweden on September 23, 1937, by A. H. Holstensson and S. P. Arvidius, as to which Arvidius executed an assignment. Subsequently there was a division of the Swedish patent made by the patent agent on behalf of S. P. Arvidius alone, all of which was subsequently assigned to Holstensson who was Arvidius' employer. The application in this country was a joint application by Holstensson and Arvidius.

The patent in suit is for an automatic record player. We are concerned here with Claim I of the patent in suit, which is as follows:

"In a talking machine, a rotatable hollow shaft, a turntable mounted on said shaft, a post extending through the shaft and having an upper extension which is offset with respect to the post for forming thereon a

shoulder for supporting a stack of records threaded on said extension, steadying means adapted to engage the upper side of said stack, said means being movable from said operative position to an inoperative position for permitting records to be threaded upon said extension, *a lever pivotally mounted in said supporting post* and having one end adapted to engage the edge of the central aperature of the lowermost record in said stack and to laterally displace said record to disengage it from said shoulder, a pick-up arm mounted adjacent said turntable, means operative upon completion of the playing of a record for swinging said pick-up arm outwards, said means also rocking said lever into position disengaging said lowermost record whereby the latter drops onto said turntable, and means for then returning the pick-up arm inwards to playing position." (Emphasis supplied.)

■ There can be no question about the right of an inventor who has made application for a patent in a foreign country, a party to the International Patent Treaty, to make application for a United States Patent in accordance with the terms of the treaty. Title 35 U.S.C.A. § 119 et seq.

The defense cites as prior art in opposition to the patent a number of American and foreign patents, all of which have been carefully examined. The Court is satisfied that the problem of an efficient means for the multiple playing of phonograph records without interposition of manual operation had been the subject of study by the industry for many years as shown by the many patents issued for different methods of accomplishing such multiple playing. A partial list would include:

| | | |
|---|---|---|
| Underhill | 1,438,000 | Dec. 5, 1922 |
| Boumphrey | 1,469,152 | Sept. 25, 1923 |
| Blackwell | 1,568,130 | Jan. 5, 1926 |
| Johnson et al. | 1,879,291 | Sept. 27, 1932 |
| Collision et al. | 1,938,810 | Dec. 22, 1933 |
| Ansley | 2,043,789 | June 9, 1936 |
| Arvidius | Rec. 20,819 | Aug. 9, 1938 |
| Belgian Patent Filature | 415,549 | June 30, 1936 |
| British Patent Compare | 439,106 | Nov. 17, 1935 |
| British Patent Collaro | 460,501 | Jan. 28, 1935 |
| Swedish Patent Arvidius | 87,155 | Aug. 18, 1936 |

All of the prior art disclosed that the desire for automatic multiple playing was accomplished by overhead bridge devices as taught by Compare British Patent No. 439,106, or by slicing mechanisms as taught by Arvidius Swedish Patent No. 87,155.

The Court is satisfied after examining all of the prior art, as set forth above, that Holstensson Patent No. 2,291,158 was the first fundamental and basic change in the approach to the problem. There can be no question but that the *function* performed according to the

teaching of the patent is the same as that performed manually before the invention of the automatic player and mechanically by a number of other devices as described in the patents cited in opposition to the patent in suit. There is no question but that the patent in suit shows in combination a number of known elements and describes a number of known elements. However it includes with the known elements a device which in Claim 1 is described—

"* * * a rotatable hollow shaft * * * a post extending through the shaft and having an upper extension which is offset with respect to the post for forming thereon a shoulder for supporting a stack of records threaded upon said extension * * * a lever pivotally mounted in said supporting post and having one end adapted to engage the edge of the central aperture of the lowermost record in said stack and to laterally displace said record to disengage it from said shoulder * * * said means (mechanically operating from below the turntable) also locking said lever into position disengaging said lowermost record whereby the later drops on to said turntable * * *."

So far as this Court was able to determine from the devices demonstrated in the courtroom and from the specifications and claims of the patents cited in opposition to the patent in suit all other means previously developed for the multiple playing of records were extremely awkward and/or inefficient (or both).

It is quite true that it was known to the art that a means could be developed for mechanical performance of the six essential functions which are required of all record players:

1. Set record onto turntable;
2. Swing pickup arm inwardly to playing position;
3. Lower pickup arm onto record;
4. Play record;
5. Raise pickup arm from record;
6. Swing pickup arm outwardly beyond edge of record.

Various and sundry means had been developed for the performance of all or part of these essential functions in the several patents cited by the defendant in opposition to the patent in suit. The defense claims that the plaintiffs' invention amounts to nothing more or less than a reversal of certain prior art patents cited, by turning them upside down. We refer here to such patents as Compare British Patent No. 439,106 and Collaro British Patent No. 460,501, both of which were overhead bridge type record playing devices with offset shoulder activated from above and with a rigid central post extending from below the turntable up to connect to the post depending from the overhead bridge.

After examination of the devices cited, including Compare, Collaro, and Arvidius No. 87,155, as well as the other prior art upon which the defendant relies we are satisfied that the plaintiffs' combination as set forth in Claim 1 of the patent in suit is something more novel and original than a mere upside down reversal of a device previously patented by other inventors.

■ Thus we are satisfied that the device originated by Arvidius and Holstensson was original in conception and unless it is barred for some other reason it was and is the subject of a valid patent. To hold that that patent and the Swedish application upon which it was based was anticipated by overhead bridge and slicing devices would be to ignore the realities of the situation as demonstrated by the units manufactured according to the teaching of the several patents and demonstrated to the trial judge in the open courtroom. There is to the uninformed layman a vast difference not only in appearance but in function between the several devices. The fact that the patent in suit did not develop an early, rapid commercial success because of the quality of the records then being used and their fragility does not detract from the originality and the patentability of the

device manufactured according to the teaching of the patent in suit.

The record should further show that the Court is satisfied that the joint application of Holstensson and Arvidius S.M. 4504/1937 described the subject matter of the patent in suit and included in the description and disclosed the same device as Swedish Application No. 5761/37. We are satisfied from the proofs that the division and subsequent sole application of Arvidius was a result of the activity of the patent agent in Sweden and was not determinative and did not purport to determine who invented the material included in the joint application which resulted in United States Patent No. 2,291,-158, the patent in suit.

There is nothing in this record when the testimony of Holstensson is carefully read which would indicate that the subject matter of all of these patents was other than the result of joint activity by Holstensson and Arvidius, and the Court is satisfied that they were the joint inventors of the subject matter of Arvidius Swedish Application No. 5761/37 resulting in Swedish Patent No. 97,123, as well as of the subject matter of Swedish Application No. 4504/37 which resulted in joint patent No. 97,122 and was the basis for the patent in suit.

It is the theory and claim of the plaintiff that the defendant company by manufacturing its devices according to the teaching of Miller Patent U.S. No. 2,523,-045, issued September 19, 1950, is infringing upon the patent in suit. It is pointed out that each depends upon a center post with a spindle projecting upward with an offset for supporting a stack of records and with provision for displacing the lowermost record from the offset and placing it upon the turntable for playing. The fundamental mechanical means used below the turntable for the activation of the tone arm and of the turntable, and for the placing of the record are of no consequence to the determination of this lawsuit. The basic problem is whether the center hollow spindle of the defendant's device, following the teaching of the Miller patent, is an infringement upon the plaintiffs' patent in suit. At the outset it is quite obvious that the defendant's device and the Miller patent are a substantial improvement upon the device described in the Holstensson patent. However, they are fundamentally the same. There is involved in each a hollow center post or shaft projecting through the turntable in the center of which is a spindle device mechanically activated for the moving of a record transvertically from the offset shoulder to permit the lowermost of the previously deposited records to descend upon the turntable for playing. The fact that the device used by the defendant and described in the Miller patent is more effective, is probably more efficient, and unquestionably more satisfactory in use does not detract from the fact that it is an adaptation of the mechanical device described in the Holstensson patent.

Thus the Court is satisfied that in all essential elements the defendant's devices manufactured according to the teaching of Miller are an infringement upon the device described in Holstensson.

Law

The presumption as to the validity of patents is set forth in 35 U.S.C.A. § 282, which provides:

"A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it.

"The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:

"(1) Noninfringement, absence of liability for infringement or unenforceability,

"(2) Invalidity of the patent or any claim in suit on any ground specified in part II of this title as a condition for patentability,

"(3) Invalidity of the patent or any claim in suit for failure to comply with any requirement of sections 112 or 251 of this title,

"(4) Any other fact or act made a defense by this title."

■ This presumption is weakened if there is applicable prior art not considered by the Patent Office. France Mfg. Co. v. Jefferson Electric Co., 6 Cir., 106 F.2d 605; Wolverine Fabricating and Mfg. Co., Inc. v. Detroit Gasket and Mfg. Co., 6 Cir., 148 F.2d 399; Modern Products Supply Co. v. Drachenberg, 6 Cir., 152 F.2d 203; Cold Metal Process Company v. Republic Steel Corp., 6 Cir., 233 F.2d 828; Gibson-Stewart Company, Inc. v. Wm. Bros. Boiler and Manufacturing Company, 6 Cir., 264 F.2d 776; Murray Company of Texas, Inc. v. Continental Gin Company, 5 Cir., 264 F.2d 65. This question of the presumption of validity has been reviewed on numerous occasions and by numerous Courts. Cold Metal Process Company v. Republic Steel Corp., 6 Cir., 233 F.2d 828, certiorari denied 252 U.S. 891, 77 S.Ct. 128, 1 L.Ed.2d 86, rehearing denied 352 U.S. 995, 77 S.Ct. 323, 1 L.Ed.2d 245. It has also been reviewed in this Court, DeBurgh v. Kindel Furniture Co., D.C.W.D.Mich.1954, 125 F.Supp. 468, 473, affirmed 6 Cir., 229 F.2d 740, certiorari denied 352 U.S. 823, 77 S.Ct. 30, 1 L.Ed.2d 47, wherein Chief Judge Starr stated:

"The plaintiff's patent is presumed to be valid. 35 U.S.C. § 282. However, this presumption of validity is rebuttable, and it may be noted that the defendant cites certain prior art patents and prior public use of the Logan conveyer system, which were not cited and apparently not considered by the examiner. There is no presumption of validity over this prior art which the examiner did not consider. O'Leary v. Liggett Drug Co., 6 Cir., 150 F.2d 656, certiorari denied 326 U.S. 773, 66 S.Ct. 232, 90 L.Ed. 467. Furthermore the fact that the examiner did not mention certain prior art does not raise a presumption that he was aware of it and did not consider it applicable."

However, it should be pointed out in the instant case that the prior art which was not considered by the patent examiner was of no greater value than that which was considered by the patent examiner and in the opinion of this court was not such as would have prevented the issuance of the patent in suit.

■ Thus we enter upon a consideration of this case with the presumption that the patent is valid and it is axiomatic that the burden is upon the defendant to establish the invalidity of the patent. 35 U.S.C.A. § 282. Mumm v. Decker & Sons, 1936, 301 U.S. 168, at page 171, 57 S.Ct. 675, 676, 81 L.Ed. 983, where the Supreme Court of the United States stated:

"In a suit for infringement of a patent it is not a part of the plaintiff's case to negative prior publication or prior use or the other matters to which R.S. 4886 and 4887 refer. These are matters of affirmative defense. As this Court said in Cantrell v. Wallick, 117 U.S. 689, 695, 696, 6 S.Ct. 970, 974, 29 L. Ed. 1017: 'For the grant of letters patent is prima facie evidence that the patentee is the first inventor of the device described in the letters patent, and of its novelty. * * * The issue of the patent is enough to show, until the contrary appears, that all the conditions under which a discovery is patentable in accordance with the statutes have been met. Hence, the burden of proving want of novelty is upon him who avers it. * * *. Not only is the burden to make good this defense upon the party setting it up, but his burden is a heavy one, as it has been held that "every reasonable doubt should be resolved against him. * * *" ' "

■ In addition the patent in suit has been previously tried and found valid and infringed by Judge Perry of the Northern District of Illinois in Holstensson v. Webco, D.C.Ill., 1957, 150 F.Supp. 441. While we recognize that we are not bound by Judge Perry's decision nevertheless it is entitled to the respect and consideration of this court, see Cold Metal Process Co. v. Republic Steel Corp., 6 Cir., 1956, 233 F.2d 828. A leading case on this subject is Mast, Foos & Co. v. Stover Mfg. Co., 1899, 177 U.S. 485, at pages 488, 489, 20 S.Ct. 708, 710, 44 L.Ed. 856,

where Mr. Justice Brown speaking for the Court said:

"Comity is not a rule of law, but one of practice, convenience, and expediency. It is something more than mere courtesy, which implies only deference to the opinion of others, since it has a substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question. But its obligation is not imperative. If it were, the indiscreet action of one court might become a precedent, increasing in weight with each successive adjudication, until the whole country was tied down to an unsound principle. Comity persuades; but it does not command. It declares, not how a case shall be decided, but how it may with propriety be decided. It recognizes the fact that the primary duty of every court is to dispose of cases according to the law and the facts; in a word, to decide them right. In doing so, the judge is bound to determine them according to his own convictions. If he be clear in those convictions, he should follow them. It is only in cases where, in his own mind, there may be a doubt as to the soundness of his views that comity comes in play and suggests a uniformity of ruling to avoid confusion, until a higher court has settled the law. It demands of no one that he shall abdicate his individual judgment, but only that deference shall be paid to the judgments of other co-ordinate tribunals. Clearly it applies only to questions which have been actually decided, and which arose under the same facts.

"The obligation to follow the decisions of other courts in patent cases of course increases in proportion to the number of courts which have passed upon the question, and the concordance of opinion may have been so general as to become a controlling authority. So, too, if a prior adjudication has followed a final hearing upon pleadings and proofs, especially after a protracted litigation, greater weight should be given to it than if it were made upon a motion for a preliminary injunction."

The defendant in an attempt to defeat this combination patent relies upon Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, and the cases which lead up to that opinion. The subject of combination patents has been recently considered by the Court of Appeals for the Sixth Circuit in Cold Metal Process Co. v. Republic Steel Corp., 6 Cir., 1956, 233 F.2d 828, where at pages 838–839, the Court held:

"In order to secure a true and patentable combination of old elements, the elements must co-act to produce the result achieved, the result must be new and useful, and the method of operation must be new. Great Lakes Equipment Co. v. Fluid Systems, Inc., 6 Cir., 217 F.2d 613, 617. If the method of operation is new and the result is new, the old elements perform a new function in their new environment."

As has been previously stated in the statement of facts this Court is satisfied that the result obtained was new and useful and that the method of operation was new. This is something more than the result described by Chief Judge Starr in DeBurgh v. Kindel Furniture Co., supra, 125 F.Supp. at page 474, where he stated:

"The plaintiff's patent in suit is a combination improvement patent comprising an accumulation or aggregation of old parts or elements with some slight changes, modifications or substitutions. To constitute patentable invention an aggregation of old elements or parts must cooperate to produce a new, unobvious, and unexpected result. Application of Bowen, 197 F.2d 553, 39 C.C.P.A. Patents, 1027. If invention is absent, mere utility and novelty are not alone sufficient to sustain the validity of a combination patent. * * *"

The subject of the validity of a combination patent has been reviewed by

the Circuit Court of Appeals for the Sixth Circuit in Aluminum Company of America et al. v. Sperry Products, Inc., 6 Cir., 1960, 285 F.2d 911, in a very carefully considered and well-reasoned opinion by Judge Cecil of that Court. As stated by Judge Cecil at page 917:

"Patent No. 1 now before us, if valid, must rest on the principle that it is a combination of old elements which accomplish a new and useful result. It is elementary that the elements requisite to the validity of a patent are novelty, utility and invention.

"Judge McAllister, speaking for the Court in Allied Wheel Products v. Rude, 6 Cir., 206 F.2d 752, 760, said: 'Anticipation belongs in the field of novelty. To anticipate an invention is to negative novelty; but even though a patent is not anticipated, and is concededly novel, it may lack invention. In order to anticipate an invention, it is necessary that all of the elements of the invention or their equivalents be bound in one since description or structure, where they do substantially the same work in substantially the same way.' "

We should say that we have examined the combination patent in suit as carefully as required by the Supreme Court in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra, and are satisfied that the combination patented by Holstensson is a combination of old elements with a new element whereby a new result is obtained, and we are of the opinion that the defendant's interpretation of the words "new result" is too narrow and should not be followed.

Up to the time of the development of the device covered by the patent in suit the result obtained by a machine manufactured according to the teaching of that patent was not possible through the use of any other known device.

■ Defendant also relies upon the provisions of Sec. 112 of 35 U.S.C.A., and alleges that the plaintiff has overclaimed

the teaching of the patent in Claim 1 of the patent in suit. There can be no question but that a patent is invalid if the claims are overreaching, O'Reilly v. Morse, 1853, 15 How. 62, 56 U.S. 62, 14 L.Ed. 601, and see Patrol Valve Co. v. Robertshaw-Fulton Controls Co., 6 Cir., 1954, 210 F.2d 147, and cases therein cited.

■ This Court is satisfied that the patent in suit does not overclaim the matters described and shown in the application and the resulting patent.

Defendant claims that there was no element of commercial success in plaintiffs' patent. This has been answered by the Court of Appeals for the Sixth Circuit in Aluminum Company of America v. Sperry Products, Inc., supra, where at page 923 of 285 F.2d the Court stated:

"The claim that the trial judge based his finding of validity of patent No. 1 on commercial success is without foundation. We do not find anything in the opinion that would indicate he made such a finding, nor have counsel for the defendants referred any such findings to us. Only in close cases where there is some doubt about invention will commercial success tip the scales in favor of validity. If invention is lacking in a device no amount of commercial success will validate a patent. Jungersen v. Ostby & Barton Co., 335 U.S. 560, 567 [69 S.Ct. 269, 93 L.Ed. 235]; Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 279 [64 S.Ct. 593, 88 L.Ed. 721]; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153 [71 S.Ct. 127, 95 L.Ed. 162]."

■ This Court does not think that the issue of invention is so close that it is necessary to resort to the question of commercial success in order to sustain or deny validity.

■ The law relating to infringement is clearly stated in Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 569, 18 S.Ct. 707, 42 L.Ed. 1136, quoting

from Burr v. Duryee, 1 Wall. 531, 573, 17 L.Ed. 650:

" 'is a copy of the thing described in the specification of the patentee, either without variation, or with such variations as are consistent with its being in substance the same thing. If the invention of the patentee be a machine, it will be infringed by a machine which incorporates in its structure and operation the substance of the invention; that is, by an arrangement of mechanism which performs the same service or produces the same effect in the same way, or substantially the same way. * * * That two machines produce the same effect will not justify the assertion that they are substantially the same, or that the devices used are, therefore mere equivalents for those of the other.'

" 'Infringement of a combination patent occurs only through a combination comprising every one of its elements or a mechanical equivalent.' Guide v. Desperak, 2 Cir., 249 F.2d 145, 147. See also: Rowell v. Lindsay, 113 U.S. 97, 102 [5 S.Ct. 507, 28 L.Ed. 906]; Imhaeuser v. Buerk, 101 U.S. 647 [25 L.Ed. 945].

" 'It is well established that an improver cannot appropriate the basic patent of another, and that the improver without a license is an infringer, and may be sued as such.' Tempco Electric Co. v. Apco Co., 275 U.S. 319, 328 [48 S.Ct. 170, 173, 72 L.Ed. 298]. See also: Cochrane v. Deener, 94 U.S. 780, 787 [24 L.Ed. 139]; Cantrell v. Wallick, 117 U.S. 689, 694 [6 S.Ct. 970, 29 L.Ed. 1017]; Chesapeake & Ohio Ry. Co. v. Kaltenbach et al., 4 Cir., 95 F.2d 801, 804.

" 'If the infringing device performs the same function as the patented device, it is immaterial that it also performs some other function.

It is still none the less an equivalent of the patented device, and an appropriation of the patented invention.' " [285 F.2d 923.]

And it is obvious that an accused device cannot escape infringement by merely adding features. Holland Co. v. American Steel Foundries, 7 Cir., 190 F.2d 37, certiorari denied, 342 U.S. 859, 72 S.Ct. 86, 96 L.Ed. 647; Aluminum Co. of America v. Thompson Products, 6 Cir., 122 F.2d 796; Kelley-Koett Mfg. Co. v. McEuen, 6 Cir., 130 F.2d 488, certiorari denied 318 U.S. 762, 63 S.Ct. 662, 87 L.Ed. 1134.

This trial court is satisfied that the accused device embodies the basic feature of the patent in suit with some added features which presumably make it operate more efficiently.

While the expert, Mr. Faulkner, attempted to point out that the teaching of the patent in suit was not new and contributed nothing to the art, at the same time he took the position that the devices manufactured by the defendant under the Miller patent were novel in the extreme and were vastly different from Holstensson's invention. We are of the opinion that the testimony of the expert for the defendant could readily be classed as one which overclaimed the novelty of the defendant's device and underestimated the novelty of the plaintiffs' device.

Thus the Court concludes: that the device of the plaintiff Holstensson was original and novel and was the proper subject for the issuance of a patent. The Court further concludes that there was no overreaching, that there was no other reason which would bar the issuance of the patent, and the Court therefore concludes that the patent is valid in all respects. The Court further concludes that the defendant's device manufactured according to the teaching of the Miller patent infringed upon the rights of the plaintiffs, and the plaintiffs are entitled to a judgment for damages.