**[Cite as *United Arab Shipping Co. v. PB Express, Inc.*, 2011-Ohio-4416.]**

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96162**

---

## UNITED ARAB SHIPPING COMPANY

PLAINTIFF-APPELLEE

vs.

## PB EXPRESS, INC.

DEFENDANT-APPELLANT

---

**JUDGMENT:**
**REVERSED AND REMANDED**

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-688180

**BEFORE:** Sweeney, P.J., Cooney, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 1, 2011

**ATTORNEY FOR APPELLANT**

John M. Manos, Esq.
739 East 140th Street
Cleveland, Ohio 44110

**ATTORNEY FOR APPELLEE**

Susan Hartman Muska, Esq.
One South St. Clair Street, Suite 2-C
Toledo, Ohio 43604-8786

JAMES J. SWEENEY, P.J.:

**{¶ 1}** Defendant-appellant PB Express, Inc. ("PB") appeals the court's judgment in favor of plaintiff-appellee United Arab Shipping Co. ("United"). After reviewing the facts of the case and pertinent law, we reverse and remand to the trial court.

**{¶ 2}** United contracted with PB to transport shipping containers to and from a port in Savannah, Georgia. The transactions between the parties are governed by the Uniform Intermodal Interchange and Facilities Access Agreement ("UIIA"). Pursuant to the UIIA, PB had an allotted amount of time to complete each transport without being required to pay per diem use charges.

**{¶ 3}** In the spring of 2008, fuel costs rose to unprecedented levels, and the independent contractors who PB hired to transport the containers were delayed or not

responding to transport requests. As a result, containers were not transported within the allotted time, and United invoiced PB $25,342.50 in per diem use charges. PB refused to pay the charges, arguing that the independent contractors' refusal to work was beyond its control.

**{¶ 4}** On March 24, 2009, United filed suit against PB to collect the outstanding debt. On October 27, 2010, the case was tried to the bench. PB stipulated to United's account but argued that it was exempt from paying the per diem use charges under the force majeure clause of the UIIA. The court granted judgment to United, finding that "[t]he actions by the independent truck drivers were dictated by economic hardship and do not constitute a strike," rendering the UIIA's force majeure clause inapplicable.

**{¶ 5}** PB appeals and raises one assignment of error for our review.

**{¶ 6}** "I. The trial court's restrictive interpretation of the force majeure clause is contrary to law because the cause for delay was a work stoppage beyond the appellant's control similar to a strike."

**{¶ 7}** The standard of review to be applied to the instant case is twofold. Contract interpretation is a matter of law, which courts review under a de novo standard. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶35. "When a trial court makes factual findings, however, supporting its determination [regarding contract interpretation] * * *, those factual findings should be reviewed with great deference." Id. at ¶37.

**{¶ 8}** The force majeure clause in the UIIA states as follows:

**{¶ 9}** "In the event [PB] is unable to [transport the containers] within the free time * * * as a result of Acts of God, war, insurrections, strikes, fire, flood or any like causes beyond [PB's] control, [PB] shall be exempted from the per diem charges to the extent of, and for the duration of, the condition that prevented the redelivery of the [containers]."

**{¶ 10}** In its judgment entry, the trial court made the following findings of fact pertinent to this appeal, which are supported by competent, credible evidence in the record:

**{¶ 11}** "5. In the Spring of 2008, fuel costs rose to unprecedented levels.

**{¶ 12}** "6. The independent truck drivers [PB] had previously hired were delayed or not responding to [PB's] requests for interchange transport * * *.

**{¶ 13}** "7. As a result, equipment remained at the port beyond the scheduled time for departure. [United] charged [PB] per diem service fees totaling $25,342.50.

**{¶ 14}** "* * *

**{¶ 15}** "9. The UIIA contains a force majeure provision, which would exempt [PB] from per diem charges in the event of a strike."

**{¶ 16}** Additionally, the trial court came to the following conclusions of law:

**{¶ 17}** "10. Black's Law Dictionary defines a strike as: 'An organized cessation or slowdown of work by employees to compel the employer to meet the employees' demands; a concerted refusal by employees to work for their employer, or to work at their customary rate

of speed, until the employer grants the concessions that they seek.' Black's Law Dictionary (9th ed. 2009).

**{¶ 18}** "11. 'A party cannot be excused from performance merely because performance may prove difficult, burdensome, or economically disadvantageous.' *Stand Energy Corp. v. Cinergy Services, Inc.*, (2001), 144 Ohio App.3d 410, citing *State ex rel. Jewett v. Sayre* (1914), 91 Ohio St. 85; *Millers Cove Energy Co., Inc. v. Moore* (C.A.6, 1995), 62 F.3d 155.

**{¶ 19}** "12. The actions by the independent truck drivers were dictated by economic hardship and do not constitute a strike.

**{¶ 20}** "13. The UIIA's force majeure provision is inapplicable, and therefore, [PB] is not exempted from the per diem fees charged by [United]."

**{¶ 21}** Upon review, we find that the independent contractors' refusal to work excused PB's performance under the language of the UIIA's force majeure clause, "* * * as a result of * * * strikes * * * or any like causes beyond [PB's] control." The motivation or reasoning behind the refusal to work is not a part of the definition of "strike" cited by the trial court. In fact, we venture to say that many strikes are dictated by economic hardship; regardless, cessations of work until demands are met constitute strikes. See, generally, *Sterling & Welch Co. v. Duke* (1946), 67 N.E.2d 24, 28 (stating that "[i]n all labor disputes there is what is known as an allowable area of economic conflict, the principal weapon of economic conflict being that of the strike").

**{¶ 22}** The facts of *Stand Energy Corp.*, upon which the trial court relied in reaching its decision, are distinguishable from the facts at hand. In *Stand*, the plaintiff refused to perform under the contract, which would have required it to "purchase power at high market prices and provide it to Cinergy at a low contract price," because of "unseasonably hot temperatures * * *, record demand for power and unprecedented high hourly prices for electric power. * * * At trial, Stand Energy's president testified that she had relied upon *force majeure* to preserve the economic vitality of the company, and to save the jobs of fifty employees." Id. at 417. The court held that "[t]he inability to purchase a commodity at an advantageous price is not a contingency beyond a party's control," and may not subsequently constitute a force majeure. Id. at 416. In *Stand*, there was no evidence of a refusal to work by employees or independent contractors.

**{¶ 23}** In the instant case, however, the court did not find, and the evidence does not show, that PB failed to perform because of high gas prices. Rather, the court found that PB failed to perform because its independent contractors "were delayed or not responding" to work orders. This is supported by evidence in the record — PB's president testified that there were no drivers to transport the containers because of the strike. The work stoppage was beyond PB's control, which excuses non-performance under the UIIA force majeure clause.

**{¶ 24}** Accordingly, the trial court erred by entering judgment in favor of United and PB's sole assignment of error is sustained.



**{¶ 25}** Judgment reversed and granted in favor of PB as a matter of law. Case remanded to the trial court for proceedings consistent with this opinion.

It is, therefore, considered that said appellant recover of said appellee its costs herein.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, PRESIDING JUDGE

SEAN C. GALLAGHER, CONCURS;
COLLEEN CONWAY COONEY, J., DISSENTS (SEE ATTACHED DISSENTING OPINION.)

COLLEEN CONWAY COONEY, J., DISSENTING:

**{¶ 26}** I respectfully dissent. PB contends that the refusal of the contractors to work due to the high gas prices constitutes an unforeseen cause beyond their control, thus a situation

governed by the force majeure clause. A force majeure clause in a contract defines the scope of unforeseeable events that might excuse nonperformance by a party. See *United States v. Brooks-Callaway Co.* (1943), 318 U.S. 120, 63 S.Ct. 474, 87 L.Ed. 653. To use a force majeure clause as an excuse for nonperformance, the nonperforming party bears the burden of proving that the event was beyond the party's control and without its fault or negligence. *Gulf Oil Corp. v. Fed. Energy Regulatory Comm.* (C.A.3, 1983), 706 F.2d 444; see, also, *N. Indiana Pub. Serv. Co. v. Carbon Cty. Coal Co.* (C.A.7, 1986), 799 F.2d 265, 1 UCC Rep.Serv.2d 1505.

**{¶ 27}** In a closely analogous case, the First District Court of Appeals affirmed the trial court's findings that Stand Energy had breached two contracts to provide power despite a claim of force majeure. *Stand Energy Corp. v. Cinergy Serv., Inc.* (2001), 144 Ohio App.3d 410, 760 N.E.2d 453. The evidence in *Stand Energy* demonstrated that two "upstream" power suppliers could not meet their obligations to Stand Energy due to unseasonably hot temperatures that caused a record demand for power and unprecedented high hourly prices for electric power. Id. at 417.

**{¶ 28}** Despite evidence that Stand Energy had relied on force majeure to preserve "the economic vitality of the company," the appellate court found that the trial court could have concluded that the nonperformance was dictated by economic hardship and not by force

majeure. An appellate court may not reverse the trial court's judgment if it is supported by some competent, credible evidence going to all the essential elements of the case. Id. at 417.

**{¶ 29}** Mistaken assumptions about future events or worsening economic conditions, however, do not qualify as a force majeure. *Stand Energy* at 416. "When a party assumes the risk of certain contingencies in entering a contract, * * * such contingencies cannot later constitute a force majeure." *Dunaj v. Glassmeyer* (C.P.1990), 61 Ohio Misc.2d 493, 497, 580 N.E.2d 98. A party cannot be excused from performance merely because performance may prove difficult, burdensome, or economically disadvantageous. *State ex rel. Jewett v. Sayre* (1914), 91 Ohio St. 85, 109 N.E. 636.

**{¶ 30}** Although PB characterizes the actions of the contracted drivers as a strike or *like* a strike, the record does not support this claim. The trial court made no factual findings of boycotts, threats of violence, or actual port closings. The independent owner operators with which PB contracted refused to comply based on the dramatic increase in fuel prices. A dramatic increase in fuel prices constitutes a situation in which performance becomes "difficult, burdensome, [and] economically disadvantageous." Id. Increase in fuel costs does not, however, constitute force majeure. Fuel cost increases are foreseeable and should be expected by those involved in the freight industry. The increase in costs did not make performance impossible for PB.

**{¶ 31}** It follows that PB failed to meet its burden and failed to prove that the driver's refusal to work constituted a force majeure. The record illustrates that the trial court's judgment was based on both competent and credible evidence showing that the disruption in service was caused by economic hardship. Thus, I would find no abuse of discretion in the court's judgment for United.