(C.R.D. 72–11)

C. J. TOWER & SONS OF BUFFALO, INC., A/C METCO, INC.
*v.*
UNITED STATES

(Dated June 15, 1972)

*Serko & Sklaroff* (*David Serko* and *Murray Sklaroff* of counsel) for the plaintiff.

*Harlington Wood, Jr.,* Acting Assistant Attorney General (*Frederick L. Ikenson,* trial attorney), for the defendant.

MALETZ, Judge: This case—which comes before the court on cross-motions for judgment on the pleadings pursuant to rule 4.9 [1]— involves the dutiable status of imported merchandise that was described on the invoice as composite powder. The import was classified by the government under item 657.50 of the tariff schedules, as modified by T.D. 68–9, as "[a]rticles of nickel, not coated or plated with precious metal" and assessed with duty at the rate of 16 percent ad valorem.

Plaintiff's claim is that the importation is more specifically provided for under item 620.32, as modified by T.D. 68–9, as "[n]ickel powders" and therefore entitled to duty-free entry.

The pertinent provisions of the tariff schedules are as follows:

Classified under:

Schedule 6, Part 3, Subpart G. — Metal Products Not Specially Provided For

Subpart G headnote:

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

\*        \*        \*        \*        \*        \*        \*

[1] Rule 4.9 provides:
After the complaint and answer are filed, any party may move for judgment on the pleadings: *Provided,* That no such motion may be filed after the action has been set for trial, except by prior order of the court upon motion. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and are not excluded by the court, the motion shall be treated as one for summary judgment and shall be disposed of as provided in Rule 8.2, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 8.2.

657.50    Articles of nickel, not coated or plated with
            precious metal_____ 16% ad val.

      Claimed under:

      Schedule 6, Part 2, Subpart E.—Nickel
      Subpart E headnotes:

      1. This subpart covers nickel, its alloys, their so-called basic shapes and forms, and also includes nickel waste and scrap.
      2. Alloys of nickel: For the purposes of the tariff schedules, alloys of nickel are metals in which the nickel content is, by weight, less than 99.0 percent, but not less than any other metallic element. In the absence of context which requires otherwise, the term "nickel", wherever used in the tariff schedules, includes alloys of nickel.

      *     *     *     *     *     *     *

      Nickel powders and flakes:

      *     *     *     *     *     *     *

620.32        Powders _____ Free

Against this background, examination of the pleadings shows that it is undisputed that the merchandise in question is a metal powder which is in chief value and chief weight of nickel, and that each particle of the powder consists of a core of aluminum coated with nickel. An additional allegation in the complaint that the merchandise is purchased and sold as composite powder, 82 percent nickel and 18 percent aluminum, is admitted by defendant solely for purpose of its cross-motion but otherwise denied for lack of information or knowledge.

In this factual setting, plaintiff argues in support of its motion that this court and the Bureau of Customs have uniformly held that when an article specified in a tariff provision is preceded by an adjective describing the material from which it is made, e.g., "metal buttons", "woolen rags", the provision embraces all such articles which are wholly or in chief value of the named material, and that, accordingly, the tariff schedule provision—item 620.32—for "nickel powders" covers all powders in chief value of nickel, including the merchandise in issue.

Defendant asserts in its cross-motion that the authorities cited by plaintiff for its "chief value" theory are inapplicable; that the subpart E headnotes to schedule 6, part 2 (quoted previously) limit item 620.32 to nickel, nickel alloys, and their basic shapes or forms; that the merchandise in question is neither nickel nor nickel alloy, nor a basic shape or form thereof; and that the merchandise does not come within the common meaning of "nickel powder".

Before considering these arguments, it is well to note that when a motion is directed solely to the pleadings, the movant admits the truth of his adversary's well-pleaded factual allegations but denies their sufficiency as a matter of law. 6 Moore *Federal Practice* (2d ed.) par. 56.11, p. 2144. Thus, the motion admits all material facts pleaded by the opposing party but does not admit conclusions of law or facts which would not be admissible in evidence at the trial. *Rosenhan* v. *United States*, 131 F. 2d 932 (CA10 1942), *cert. den.* 318 U.S. 790 (1943) ; *Duhame* v. *United States*, 119 F. Supp. 192 (Ct. Cl. 1954) ; *Hargis Canneries* v. *United States*, 60 F. Supp. 729 (W.D.Ark. 1945).

Furthermore, the motion must be denied if, as against the moving party, the pleadings raise any factual issues, *International Forwarding Co.* v. *Brewer*, 181 F. 2d 49 (CA5 1950), but must be granted if there are no disputed facts and the movant is clearly entitled to judgment as a matter of law. *Edmonds* v. *United States*, 148 F. Supp. 185 (E.D. Wisc. 1957). That is, it must appear to a certainty that the opposing party is entitled to no relief under any state of facts that could be approved in support of his claim or allegations. *Brown* v. *Bullock*, 194 F. Supp. 207 (S.D.N.Y. 1961), *aff'd* 294 F. 2d 415 (CA2 1961).

Where there are cross-motions, the court is under no duty to grant judgment merely because both parties ask for it or are under the belief that there are no factual issues to be tried. See e.g., *Volunteer State Life Insurance Company* v. *Henson*, 234 F. 2d 535 (CA5 1956) ; *Hycon Mfg. Co.* v. *H. Koch & Sons*, 219 F. 2d 353 (CA9 1955), *cert. den.* 349 U.S. 953 (1955) ; *Oil Trading Associates, Inc.* v. *Texas City Refining, Inc.*, 201 F. Supp. 846 (S.D.N.Y. 1962).

With these principles in mind, we turn now to plaintiff's motion which presents the question as to whether, on the undisputed facts,[2] the merchandise in issue is, as a matter of law, properly classifiable as nickel powder under item 620.32 because it is in powder form and in chief value of nickel.

It is, of course, basic that statutes are to be interpreted in such a way as to carry out the legislative intent. In the tariff schedules, the primary source for ascertaining that intent consists of the governing interpretive headnotes which "specify certain special rules of interpretation, define important terms, prescribe special procedures, and, in general, clarify the relationships between the various schedules, parts, and subparts and the classification descriptions incorporated

---

[2] The various allegations of both parties with respect to the classification of the merchandise and whether or not it is a nickel powder are legal conclusions and thus are not deemed admitted for purposes of either motion. Defendant's denial of plaintiff's allegation that the merchandise is bought and sold as "composite powder, 82% nickel and 18% aluminum"—which, as previously noted, is deemed admitted by defendant only for purposes of considering its cross-motion—does not raise a factual issue on plaintiff's motion as it is not material under plaintiff's theory of the case.

therein." *Tariff Classification Study*, *Submitting Report*, November 15, 1960, p. 9. On this aspect, the interpretive headnotes to the claimed classification provision—item 620.32—read in pertinent part, as follows:

Schedule 6, headnotes:

\*　　\*　　\*　　\*　　\*　　\*　　\*

　　2. For the purposes of the tariff schedules, unless the context requires otherwise—

\*　　\*　　\*　　\*　　\*　　\*　　\*

　　(b) the term "base metal" embraces \* \* \* nickel \* \* \* and base-metal alloys;

　　(c) the term "metal" embraces precious metals, base metals, and their alloys; \* \* \*

Schedule 6, part 2 headnotes:

　　1. This part covers precious metals and base metals (including such metals when they are chemically pure), their alloys, and their so-called basic shapes and forms \* \* \*

\*　　\*　　\*　　\*　　\*　　\*　　\*

2. Alloys.—(a) For the purposes of the tariff schedules, alloys are defined and classifiable as hereinafter set forth. Alloys are metallic substances consisting of two or more metals, or of one or more metals and one or more non-metals, intimately united, usually by having been fused together and which may or may not have been dissolved in each other when molten; they include sintered mixtures of metal powders and heterogeneous intimate mixtures obtained by fusion, but do not include substances in which the total weight of the metals does not equal or exceed the total weight of the non-metal components.

\*　　\*　　\*　　\*　　\*　　\*　　\*

　　(c) Base-metal alloys are alloys which contain one or more base metals and are not any of the precious-metal alloys, as defined in (b) of this headnote. Base-metal alloys are classifiable as—

　　　　(i) alloys of that base metal which predominates by weight over each of the other metallic elements contained therein, \* \* \*

\*　　\*　　\*　　\*　　\*　　\*　　\*

　　(d) in the tariff schedules, unless the context requires otherwise, a provision for a specific metal includes that metal and its alloys.

The foregoing headnote 1 makes it clear that the provisions of schedule 6, part 2, are limited in terms of material content (apart from metal scrap and waste) to precious and base metals and their alloys in their basic shapes and forms. Alloys, in turn, are defined in headnote 2(a) as "metallic substances consisting of two or more metals \* \* \* intimately united, usually by having been fused together" and "in-

clude sintered mixtures of metal powders and heterogeneous intimate mixtures obtained by fusion * * *." Finally, headnote 2(c)(i) specifies that base-metal alloys are to be classified as alloys of the metal predominating by *weight*.

This construction of headnote 2(c)(i) is emphasized by the *Explanatory Notes to the Tariff Classification Study, Schedule 6*, November 15, 1960, which state (pp. 83–88):

> This part [2] covers precious metals and base metals, their alloys, and their so-called basic shapes and forms, wrought and unwrought. This part also covers metal waste and scrap. * * *
>
>     *      *      *      *      *      *      *
>
> In the existing schedules, base metal alloys are classified according to their component metal of chief value rather than on the almost universally accepted practice of classifying them according to the component metal which predominates by weight over each of the other metal components. * * *
>
>     *      *      *      *      *      *      *
>
> * * * Headnote 2 of schedule 6 specifically names each of the elements which is to be regarded as a base metal and as a precious metal. All of the metals provided for in part 2 are included even when they are chemically pure.
>
> The provisions of headnote 2 to this part objectively define alloys including precious-metal alloys and base-metal alloys. Aside from clarifying changes in language, headnote 2 is the same as it was when it was published for public hearings. *The definitions involve a change from distinctions based on component metal of chief value to objective distinctions based on weight. This change is essential to proper and orderly classification.* No objections were raised against this proposal, and it is believed that the incidental rate changes which may be involved will not significantly affect trade. Detailed specifications with respect to the alloys of each of the base metals are included in the provisions of the respective subparts. [Emphasis added.]

Use of the predominant weight test for determining which metallic component governs classification of a base-metal alloy appears generally throughout part 2 (in addition to the "basic shapes and forms" requirement) and is specifically set out for nickel in the subpart E headnotes which (as previously seen) read as follows:

> 1. This subpart covers nickel, its alloys, their so-called basic shapes and forms, and also includes nickel waste and scrap.
> 2. <u>Alloys of nickel</u>:  For the purposes of the tariff schedules, alloys of nickel are metals in which the nickel content is, by weight, less than 99.0 percent, but not less than any other metallic element. In the absence of context which requires otherwise, the terms *"nickel"*, wherever used in the tariff schedules, includes alloys of nickel.

In short, subpart E covers, in addition to nickel waste and scrap, (1) nickel which is in the pure state down to a content by weight of 99.0 percent; and (2) nickel alloys, that is, metals in which the nickel content, by weight, is under 99.0 percent but not less than any of the other metallic elements present, all of which must be in their basic shape or form (e.g., bars, plates, sheets, strips, rods, angles, shapes, sections, powders, flakes, pipes, etc.). The subpart does not include nickel mixtures which are neither nickel nor nickel alloys in their basic shape or form. Thus, the governing headnotes and cited legislative history clearly rule out plaintiff's "chief value" theory.[3]

Withal, the question still remains as to whether, under the court's construction of the tariff provision in issue, plaintiff is entitled to judgment on the pleadings. As to this, the complaint's barebone allegations (as noted before) disclose only that the merchandise is in chief weight (and value) of nickel and that each particle of the powder consists of a core material of aluminum coated with nickel. It was not alleged in the complaint, nor can the court conclude from the pleadings, that the merchandise is nickel or nickel alloy in a basic shape or form. For one thing, the imported merchandise is obviously not nickel *per se* in view of the presence of the aluminum. Further, absent admissions or receipt of additional facts, such as the method of production or manufacture, there is no basis upon which the court can determine whether the merchandise is an alloy within the meaning of schedule 6, part 2, headnote 2(a), that is, a "metallic substance consisting of two or more metals * * * intimately united, usually by having been fused together" or a sintered mixture of metal powders obtained by fusion or a heterogeneous intimate mixture obtained by fusion.

Moreover, while the importation indisputably is in powder form (a fact amply demonstrated by the sample attached to the complaint), the court is unable to make a determination from the pleadings as to whether or not a nickel coated core of aluminum constitutes a basic shape or form of nickel or nickel alloy.

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is denied.

It is important to add, however, that although plaintiff proceeded on the wrong legal theory, it does not necessarily follow that it is

---

[3] In this regard, all but one of the cases cited by plaintiff in support of its legal theory are pre-TSUS and hence inapplicable. The holding in the cited post-TSUS case, *Sprague Electric Co., et al.* v. *United States (Montgomery Ward & Co., Party-in-Interest)*, 64 Cust. Ct. 135, C.D. 3972 (1970), which involved the claimed classification of an article under item 535.14 in schedule 5, part 2, subpart D, was based on the legislative history of that provision as expressed in the *Tariff Classification Study* and the *Brussels Nomenclature.* It is not pertinent to part 2 of schedule 6 which, in the most explicit terms, defines the nature of the metals and alloys provided for therein. Similarly, the abstracts of administrative rulings cited by plaintiff, which involve classification of metal substances under TSUS, are not relevant as they concern different merchandise and issues.

precluded from proving the facts necessary to establish its claim or that defendant is thereby entitled to judgment on its cross-motion. *Ramsouer* v. *Midland Valley R. Co.*, 135 F. 2d 101 (CA8 1943); *Ideal Development Co.* v. *Costello*, 217 F. Supp. 365 (E.D. Pa. 1963). In this latter connection, the test, on defendant's motion for judgment on the pleadings (or summary judgment), is whether, viewing the pleaded facts in the light most favorable to plaintiff, there is any basis upon which the latter might recover. In other words, the opposing party must be given the benefit of all reasonable inferences favorable to it which might be drawn from the pleadings. *United States* v. *Diebold, Inc.*, 369 U.S. 654 (1962); *Empire Electronics* v. *United States*, 311 F. 2d 175 (CA2 1962); *National Labor Relations Board* v. *Weirton Steel Company*, 146 F. 2d 144 (CA3 1944); *Ramsouer* v. *Midland Valley R. Co.*, *supra*, 135 F. 2d 101. If it is at all possible that plaintiff may be able to meet its burden of proof, it is inappropriate to grant judgment against it. *Williams* v. *Chick*, 373 F. 2d 330 (CA8 1967); *Melo-Sonics Corp.* v. *Cropp*, 342 F. 2d 856 (CA3 1965); *Dotschay* v. *National Mutual Ins. Co. of District of Columbia*, 246 F. 2d 221 (CA5 1957); *Dyson* v. *General Motors Corporation*, 298 F. Supp. 1064 (E.D. Pa. 1969).

Considering the present pleadings with the foregoing in mind, it cannot be said with any degree of certainty that plaintiff would be unable to offer proofs tending to establish the ultimate facts necessary to support its claim for classification of the merchandise as nickel powder under item 620.32, specifically, that it is a nickel alloy in a basic shape or form. This being the situation, plaintiff should not be foreclosed from the opportunity to present its proofs. *Melo-Sonics Corp.* v. *Cropp*, *supra*, 342 F. 2d 856; *Williams* v. *Chick*, *supra*, 373 F. 2d 330.

At this juncture, we note defendant's statement (in its reply to plaintiff's response to its cross-motion for judgment on the pleadings) that (1) pursuant to rule 6.2(a), it had previously requested plaintiff to admit that the nickel contained in the powder is in non-alloyed form and that the merchandise is not the powder of a nickel alloy; that (2) plaintiff had objected to the requests on the ground that whether an article falls within the definitions of "alloys" and "alloys of nickel" in schedule 6, part 2, and in subpart E is a matter of law and not properly the subject of a request to admit; and that (3) defendant now agrees with plaintiff that the matter is one of law and urges the court to decide these questions on its cross-motion for judgment.

The court, however, is not clairvoyant and will not decide a question of law which turns upon facts that are not of record. A case cannot be precluded from trial simply because "[t]he lawyers for the respec-

tive parties, by the cross-motions, superinduced the idea that no factual questions were involved." *Hycon Mfg. Co.* v. *H. Koch & Sons, supra,* 219 F. 2d at 355.

Defendant, as noted before, also urged, in moving for judgment, that the merchandise does not come within the common meaning of "nickel powder". Whether the common meaning of that term is relevant with respect to the claimed classification and whether it excludes the merchandise in question are issues which have not been considered and argued by the parties and, therefore, are inappropriate for consideration on this motion. See e.g., *Strong* v. *Penn Central Railroad Company,* 297 F. Supp. 595 (S.D.N.Y. 1969).

For the foregoing reasons, defendant's cross-motion for judgment on the pleadings is denied.[4]

One minor matter remains. Amidst the plethora of replies and responses engendered by the present cross-motions, plaintiff moved to strike defendant's "Reply to Plaintiff's Response to Defendant's Cross-Motion for Judgment on the Pleadings" as "misleading" and as dealing with matters not in issue. (This motion in turn produced defendant's memorandum in opposition and plaintiff's reply thereto.) However, as defendant rightly notes, plaintiff's motion to strike is actually in the nature of a sur-reply or supplemental memorandum which is not provided for in the rules and was filed without first obtaining leave of the court. For this reason, the motion to strike and accompanying memorandum, defendant's response to the motion with accompanying order, and plaintiff's reply thereto are ordered physically stricken and returned to the respective parties.

---

[4] Denial of the cross-motions is without prejudice to possible amendments of the pleadings pursuant to rule 4.8.