The UNITED STATES, Appellant,

v.

C. J. TOWER & SONS OF BUFFALO, INC., a/c Metco, Inc., Appellee.

Customs Appeal No. 75–11.

United States Court of Customs and Patent Appeals.

Nov. 13, 1975.

Rex E. Lee, Asst. Atty. Gen., Andrew P. Vance, Chief Customs Section, Wesley K. Caine, New York City, for the United States.

Murray Sklaroff, New York City, attorney of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge:

This appeal is from the judgment of the United States Customs Court, Richardson, J., 73 Cust.Ct. 101, C.D. 4559, 381 F.Supp. 979 (1974), sustaining appellee's claim against the classification of a certain nickel-aluminum powder imported from Canada under item 657.50, TSUS,

as modified by Presidential Proclamation, T.D. 68–9, as "Articles of nickel, not coated or plated with precious metal." The Customs Court held the goods to be "Nickel * * * Powders" under item 620.32, as modified by T.D. 68–9. We affirm.

### The Importation

The goods, invoiced as "Composite PDR 82 NI/AL 18," comprise a metallic powder, each particle of which consists of a core of aluminum on which a layer of nickel has been deposited by a hydrogen reduction process. The powder contains 80–83% nickel and 17–20% aluminum by weight and is nickel in chief value. Use of the powder is in the flame spraying (also known as plasma spraying) process of coating metals in which it is sprayed through an oxyacetylene flame onto the substrate to be coated. During the coating process the nickel and aluminum combine to form a new substance, nickel aluminide.

### Statutory Provisions

The pertinent portions of the tariff schedules are:

SCHEDULE 6.—METALS AND METAL PRODUCTS

\* \* \* \* \* \*

PART 2.—METALS, THEIR ALLOYS, AND THEIR BASIC SHAPES AND FORMS

*Part 2 headnotes:*

1. This part covers precious metals and base metals (including such metals when they are chemically pure), their alloys, and their so-called basic shapes and forms, and, in addition, covers metal waste and scrap. * * *

2. *Alloys.*—(a) For the purposes of the tariff schedules, alloys are defined and classifiable as hereinafter set forth. Alloys are metallic substances consisting of two or more metals, or of one or more metals and one or more non-metals, intimately united, usually by having been fused together and which may or may not have been dissolved in each other when molten; they include sintered mixtures of metal powders and heterogeneous intimate mixtures obtained by fusion, but do not include substances in which the total weight of the metals does not equal or exceed the total weight of the non-metal components.

\* \* \* \* \* \*

### Subpart E.—Nickel

*Subpart E headnotes:*

1. This subpart covers nickel, its alloys, their so-called basic shapes and forms, and also includes nickel waste and scrap.

2. *Alloys of nickel:* For the purposes of the tariff schedules, alloys of nickel are metals in which the nickel content is by weight, less than 99.0 percent, but not less than any other metallic element. In the absence of context which requires otherwise, the term *"nickel"*, whenever used in the tariff schedules, includes alloys of nickel.

\* \* \* \* \* \*

Nickel powders and flakes:

\* \* \* \* \* \*

| Item | | |
|---|---|---|
| 620.32 | Powders . . . . . . . . | Free |

\* \* \* \* \* \*

### PART 3.—METAL PRODUCTS

\* \* \* \* \* \*

### Subpart G.—Metal Products Not Specially Provided For

*Subpart G headnotes:*

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

\* \* \* \* \* \*

| Item | | |
|---|---|---|
| 657.50 | Articles of nickel, not coated or plated with precious metal . . . . . . . . . . . . . . | 16% ad val. |

### Proceedings Below

Before trial, both parties moved for judgment on the pleadings. In denying both motions,[1] Judge Maletz considered and rejected appellee's initial contention that, since the powder was nickel in chief value, it should perforce be properly classified as a "nickel powder," as distinct from a "nickel alloy powder":

In short, subpart E covers, in addition to nickel waste and scrap, (1) nickel which is in the pure state down to a content by weight of 99.0 percent; and (2) nickel alloys, that is, metals in which the nickel content, by weight, is under 99.0 percent but not less than any of the other metallic elements present, all of which must be in their basic shape or form (e. g., bars, plates, sheets, strips, rods, angles, shapes, sections, powders, flakes, pipes, etc.). The subpart does not include nickel mixtures which are neither nickel nor nickel alloys in their basic shape or form. Thus, the governing headnotes and cited legislative history clearly rule out plaintiff's "chief value" theory. [Footnote omitted.]

Judge Maletz also declined to conclude from the pleadings that the goods were a nickel (including nickel alloy) powder, in a basic shape or form, as required by item 620.32:

It was not alleged in the complaint, nor can the court conclude from the pleadings, that the merchandise is nickel or nickel alloy in a basic shape or form. For one thing, the imported merchandise is obviously not nickel *per se* in view of the presence of the aluminum. Further, absent admissions or receipt of additional facts, such as the method of production or manufacture, there is no basis upon which the court can determine whether the merchandise is an alloy within the meaning of schedule 6, part 2, headnote 2(a), that is, a "metallic substance consisting of two or more metals * * * intimately united, usually by having been

fused together" or a sintered mixture of metal powders obtained by fusion or a heterogeneous intimate mixture obtained by fusion.

Moreover, while the importation indisputably is in powder form (a fact amply demonstrated by the sample attached to the complaint), the court is unable to make a determination from the pleadings as to whether or not a nickel coated core of aluminum constitutes a basic shape or form of nickel or nickel alloy.

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is denied.

As a result of this decision on motions, the issues to be tried were reduced to whether the goods are nickel alloy, within the headnote definitions, supra, and whether the powder is a "basic shape or form." The trial produced conflicting testimony on whether the constituents of each powder particle were "intimately united" under the headnote definition of "alloy." No witness testified that there was molecular interpenetration of the nickel coating and the aluminum core, and the photomicrographs of sections of powder particles introduced in evidence appear to show there is none. The Government's witnesses were of the opinion that the constituents could be separated by physical means, although neither could describe a process suitable for doing so. Appellee's expert testified that the nickel and aluminum could not be separated physically.

It was the Government's contention below, as it is here, that the headnote 2(a) definition of "alloys" was intended to codify the common meaning of the term and that the goods are not an alloy powder within the common meaning. Judge Richardson, however, compared the headnote 2(a) definition of "alloys" with the definition of "alloy" in *Webster's Third New International Dictionary* (1961), which is, in relevant part:

---

1. 68 Cust.Ct. 377, C.R.D. 72–11, 343 F.Supp.1387 (1972).

3a: a substance composed of two or more metals intimately mixed and united usu. by being fused together and dissolving in each other when molten * * *.

Judge Richardson stated:

It appears to the court that the statutory definition in question is the product, at least in part, of the common understanding of the term "alloy", *modified to reflect the desire of the framers of the language to broaden the scope of the term.* * * * [Emphasis ours.]

[I]t seems that the framers of the definition in issue, in borrowing language from Webster, omitted the word *mixed* which followed the word *intimately* in Webster's definition, and, also modified the exemplar taken from Webster to indicate that particle fusion need not always result from mutual dissolution. Thus, it would appear that Congress did not intend that the statutory definition of "alloy" required any intermixture of the constituent metals. Consequently, the phrase "intimately united" must be regarded as being broader than the scope contended for by the defendant.

The court thus ruled in conclusion that:

The court is of the opinion that the phrase "intimately united" as employed in the statutory definition of the term "alloy" was intended by Congress to apply to a combination of metals, among other things, in close contact, association, or connection with each other, and that interpenetration of the abutting surfaces of the combined metals was not prerequisite to inclusion of the combination within the definition.

The court found that the powder possessed a degree of unification of nickel and aluminum sufficient to make it "intimately united," and thus an "alloy" powder, within the tariff definition. The court further said that "there is no question in the court's mind but that the imported powder is in a basic shape or form," and accordingly sustained appellee's claim.

## OPINION

■ We agree with Judge Richardson's interpretation. Obviously, for the reasons he enumerated, the headnote 2(a) definition of the term "alloys" is broader that the common meaning of the term, if that meaning requires a mixing or interpenetration of substances, as contended by the Government.[2] Where Congress has provided a clear definition of terms employed in a tariff statute, the industry understanding of those terms does not determine the construction to be given them by the courts. *United States v. Stone & Downer Co.,* 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013 (1927). The headnote definition includes, for instance, "sintered mixtures of metal powders." A sintered mixture is nothing more than a mass of powdered material that has been formed by heating but has not resulted from melting of the constituent materials whereby substantial molecular interpenetration would be caused to occur. *Webster's Third New International Dictionary* (1971) defines "sinter" as follows:

* * * to cause to become a coherent mass by heating without melting—used of powdered or earthy substances * * *.

The Second Edition of the same lexicon (1939) is to the same effect:

To become or cause to become a coherent solid mass by heating without thoroughly melting;—said of powdered or earthy substances.

*The American Heritage Dictionary of the English Language* (1969) gives the following definition:

---

2. Appellee's expert witness was satisfied that the imports were alloys even by common (dictionary) meaning.

*sinter* \* \* \* 2. A mass formed by sintering. —v. *sintered, -tering, -ters. tr.* To weld together (metallic powder, for example) partially and without melting. —*intr.* To form a homogeneous mass by heating without melting \* \* \*.

That sintered mixtures of metal powders were specifically included in the headnote definition of "alloys," in our view, lends further significance to the omission by Congress of certain language found in the Webster's definition of the term "alloy," alluded to by the Customs Court, i. e., that the constituent materials of the alloy must be "mixed."

The Customs Court conclusion that a broader definition of the term "alloy" than the commonly accepted meaning of the term was intended is further confirmed by the language in the headnote which provides that the constituents of the "alloys," as defined, "may *or may not* have been dissolved in each other when molten." (Our emphasis.) If the emphasized words mean anything, they mean that substantial or complete molecular interpenetration resulting from the mutual dissolving of the constituent materials is not required.

■ We also agree with the Customs Court that the merchandise is in a basic shape or form as required for classification under Part 2, Schedule 6, TSUS. The merchandise at bar is a powder. Item 620.32, TSUS, is specific to "Powders." We see no room for argument on this point. We have considered appellant's argument that the imported powder is not a basic form but find no substance in it. Appellant would rely on a somewhat ambiguous statement by Judge Maletz, which we think appellant misreads. Judge Maletz recognized in the first passage we have quoted above that powder is a basic form. The statute puts no limitation on how the material got into that form, and we therefore disagree with appellant that a powder must result from crushing, grinding, pounding, or the like.

The judgment of the Customs Court is *affirmed.*